## GREER *v.* MERCHANTS & MECHANICS BANK.

### Opinion delivered July 6, 1914.

1. CONSTITUTIONAL LAW—PERMANENT OFFICE—LEGISLATIVE DETERMINATION.—Under the Constitution, the Legislature is the sole judge of whether an office which it creates is permanent, and it has the power to declare whether an office to be created is permanent or temporary.

2. BANK DEPARTMENT—VALIDITY OF ACT CREATING.—Act 113, page 465, Acts 1913, creating the State Bank Department "for and during a period of twelve years," *held* not to be in violation of art. 19, § 9, Constitution 1874, which provides that "the General Assembly shall have no power to create any permanent State office not expressly provided for by this Constitution."

3. BANK DEPARTMENT—INSOLVENT BANKS—CHANCERY JURISDICTION.—Act 113, Acts 1913, page 465, authorizing the bank commissioner to take charge of insolvent banks, *held* not to constitute an invasion of the power of the chancery courts to appoint receivers.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Carmichael, Brooks, Powers & Rector,* for appellant.

The act in question violates art. 19, § 9, of the Constitution, and is therefore void. Every word and phrase of a Constitution must be construed as adding something to the meaning of the instrument. 2 Ark. 250; 102 Ark. 218. It is not competent for the Legislature to limit its own powers. 48 Ark. 515; 44 Ark. 273. The word "permanent" does not always embrace the idea of absolute perpetuity. 8 Barb. 185; 2 N. J. E. 155; 136 U. S. 104. A wooden sidewalk which lasted eleven years is a "permanent" sidewalk. 60 Mass. 223. A thing may be "permanent," and yet not be everlasting. 58 S. W. 814; 42 N. Y. S. 1097; 74 U. S. 290; 24 Miss. 9; 39 Ala. 546. The Legislature is without power to limit the jurisdiction of the chancery court. 6 Ark. 318; 95 Ark. 620; nor to enlarge it. 80 Ark. 145. The jurisdiction of the chancery court is fixed by the Constitution. 44 Ark. 377; 57 Ark. 528; 80 Ark. 145; 93 Ark. 389; 95 Ark. 399.

*Moore, Smith & Moore,* for appellee.

1. The act creating the office of Bank Commissioner is not in violation of art. 19, § 9, of the Constitution.

"Permanent office," as used in the Constitution, means an office necessary to the continued existence of some business of the State. Should there be a doubt as to the validity of the statute, it should be resolved in its favor. 99 Ark. 1; 93 Ark. 612.

2. The act does not attempt to limit the jurisdiction of the chancery court. It merely supersedes the necessity of the appointment of a receiver. The appointment of a receiver is merely ancillary to the administration of the estate. 63 L. R. A. 791; 47 Atl. 758; 25 S. W. 947. High on Receivers, § 6. There must be grounds for equitable interference before the court can take property out of the hands of assignee and turn it over to a receiver. 53 Ark. 81.

McCULLOCH, C. J. Appellant, in bringing this action, challenges the validity of an act of the General Assembly of 1913 creating the State Bank Department and the office of commissioner in charge of that department, the contention being that the act is violative of section 9, article 19, of the Constitution, which provides that "the General Assembly shall have no power to create any permanent State office not expressly provided for by this Constitution."

The language of that part of the act which creates the bank department, reads as follows:

"That for and during the period of twelve years from the time this act goes into effect, there is hereby created and established at the seat of Government in this State, a department to be known as the State Bank Department." Section 1, of Act 113, of Acts of 1913, p. 465.

Another section creates the office of Bank Commissioner, fixing the term of office at four years and the salary at $3,000 per year. Other officers are provided for in the act, such as inspectors, etc.

Learned counsel on each side of the case concede that, after diligent search, they have been unable to find a similar provision in the Constitution of any other State, and, therefore, have not found any discussion in the text-

books or adjudged cases throwing any light on the question.

We also have searched in vain for authorities which throw light on the subject, and have concluded that it is a question of first impression. The decision of the case must, therefore, be reached by the application of general principles in the interpretation of this provision in its relation to the whole framework of our organic law.

In the case of *Lucas* v. *Futrall,* 84 Ark. 540, we held that the constitutional mandate to the Legislature ''to provide for the education of the blind necessarily carried with it the power to create what offices the Legislature might deem necessary to carry out the power conferred,'' without offending against the provision just quoted against the creation of permanent offices.

That case, however, did not involve the decision of the question now before us, but was a mere declaration of the principle that the Constitution contained a mandate to create the particular office then under consideration, and did not, for that reason, if for no other, fall within the provision we are now inquiring into.

It is insisted by those who challenge the validity of the act that the banking business is necessarily one of a permanent nature, that the creation of this department is necessarily permanent, and that it amounted to a clear subterfuge for the Legislature to attempt to make it otherwise than permanent by thus limiting its duration to a given period of time.

Attention is called to the fact that the General Assembly, at the same session, created several other new departments, one to last for fifty years, and that that was done upon the theory that the legislative declaration made it a temporary, and not a permanent, office.

It is urged that these were mere attempts on the part of the Legislature to evade a plain mandate of the Constitution by calling offices temporary which are in fact permanent in their nature and which are designed to embrace permanent fields of activity.

The argument is not without force.

On the other hand, it is urged by learned counsel for appellees who seek to defend the statute that the framers of the Constitution having divided the Government into three branches, which were deemed necessary to the continued existence of Government and of handling the business of the State, that the words "permanent office" referred to those things which were then deemed to. be the permanent functions of Government, and that the banking department, as organized under this statute, is not of those branches of Government, and that it necessarily falls outside of the term "permanent office," as expressed in the Constitution.

We find ourselves unable to agree with either side in the reasoning upon the proposition involved, but conclude that the inquiry turns in another direction.

(1)   The framers of the Constitution obviously did not intend to place an absolute prohibition against the creation by the Legislature of offices not expressly provided for.   The prohibition only reaches to the creation of *permanent* State offices.   That being true, the question arises, who is to be the judge of the question of permanence of an office, or the necessity for its temporary existence.   The answer to this question, we think, results in the solution of the difficulty presented in this case. Observing the general rules of interpretation in determining whether a given constitutional provision is mandatory, or whether it is merely directory and cautionary to the Legislature, we are of the opinion that this provision falls within the latter class.   The command is to the Legislature itself, and it necessarily involves the power to determine the necessity for creating a temporary office, and to determine whether the work to be done is of a temporary or permanent nature.   It falls, we think, within the class of provisions like that which forbids the Legislature to enact a special law where a general law can be made applicable (Constitution, § 24, art. 5), and we have held that class of provisions to be directory and merely cautionary to the Legislature.   *Davis* v. *Gaines,* 48 Ark. 370; *Carson* v.

*St. Francis Levee District,* 59 Ark. 513; *Powell* v. *Durden,* 61 Ark. 21.

On this subject, Judge Cooley, in his work on Constitutional Limitations, spoke, as follows:

"The important question sometimes presents itself, whether we are authorized in any case, when the meaning of a clause of the Constitution is arrived at, to give it such practical construction as will leave it optional with the department or officer to which it is addressed to obey it or not, as he shall see fit. In respect to statutes, it has long been settled that particular provisions may be regarded as *directory* merely; by which is meant that they are to be considered as giving directions which *ought* to be followed, but not as so limiting the power in respect to which the directions are given that it can not effectually be exercised without observing them." Cooley's Constitutional Limitations, p. 109.

Now, there are many undertakings which can readily be called to mind in the performance of particular tasks, such as building a State Capitol, or constructing a certain highway, and the like, where it would be plain to any investigating tribunal that the work to be undertaken was temporary, even though it stretched over a considerable period of time; but there might be many border line cases where it would be more difficult to determine whether the work was temporary or permanent; and we are of the opinion that this command is one necessarily addressed to the Legislature itself, and that that branch of Government must determine how far it can exercise its powers without disobeying that command.

We attach little, if any, importance to the provision of the statute limiting the time to twelve years, for we think that the Legislature has the power to determine whether an office to be created is permanent or temporary, whether expressly declared in the act or not. If it is created as a temporary office, we must assume that the Legislature found it to be such. The creation of the office implies a determination that it is temporary, and not permanent.

There can be no irrepealable laws which depend for existence entirely upon the legislative will, and any office created by the Legislature is temporary in the sense that it is subject to the legislative will, and may be abolished at any time.

Those who take such temporary offices as may be created by the Legislature do so with notice of the insecure tenure and the acceptance of the office creates no contract with the State. *Humphrey* v. *Sadler,* 40 Ark. 100.

(2-3) We are of the opinion, therefore, that this provision of the Constitution, when rightly interpreted, constitutes a command to the Legislature, with authority to determine when temporary offices are needed, and that the determination of that question by the Legislature will be observed by the courts. It would be an usurpation of power by the courts to assume authority which had been delegated to the Legislature itself.

The fears expressed by learned counsel that this interpretation of the constitutional provision leaves it within the power of the Legislature to create new offices, *ad libitum,* even to the extent of providing for a Deputy Governor, another Auditor or Secretary of State, or additional courts, is entirely unfounded; for the Constitution itself exhausts the power of creating offices which are provided for in that instrument, and the implication is sufficiently manifest that no more are to be created.

Again, it is said that the statute, in attempting to authorize the Bank Commissioner to take charge of insolvent banks, is unconstitutional as an invasion of the power of the chancery court to appoint receivers.

We think that the original jurisdiction of the chancery courts as preserved by our Constitution does not prevent the Legislature from entering upon the supervision of any matters which fall within the police power. This act does not attempt a redistribution of judicial power, but it provides for a system of supervision which has nothing to do with the judicial function.

The chancery court was correct in sustaining a demurrer to the complaint and the decree is therefore affirmed.

Kirby, J., dissents.