GUILD v. WHITLOW.

Opinion delivered January 21, 1924.

1. PHYSICIANS AND SURGEONS—CONDITIONAL CONTRACT FOR COMPENSATION.—A physician may make a contract whereby his right to compensation may be dependent upon his curing the patient by treatment or operation.

2. FRAUDS, STATUTE OF—ORIGINAL UNDERTAKING.—Where a surgeon examined a patient, and thereafter made an agreement with the patient's brother for a fee for operating, the latter's agreement to pay therefor is an original undertaking, and not within the statute of frauds.

3. PHYSICIANS AND SURGEONS—FEE FOR OPERATION—INSTRUCTION.—An instruction that, if defendant was induced to agree to pay plaintiff, a surgeon, a specified amount for an operation in reliance on plaintiff's representation that such sum was a reasonable charge, and if the sum charged was an excessive fee, then defendant would be liable only for a reasonable fee, *held* erroneous; there being no evidence that the representation was fraudulent.

4. PHYSICIANS AND SURGEONS—RECOVERY ON QUANTUM MERUIT.—In case of emergency, where a patient or the person employing a surgeon was laboring under such great excitement or stress of mind that an unconscionable advantage was taken of him, the contract will be set aside on the ground of fraud, and recovery allowed on a *quantum meruit*.

5. PHYSICIANS AND SURGEONS—FRAUD IN CONTRACT.—It cannot be said that a contract for a surgeon's fee was procured by fraud

because he charged more than other surgeons of the same locality charged for similar operations.

Appeal from Benton Circuit Court; *W. A. Dickson,* Judge; reversed.

### STATEMENT OF FACTS.

W. A. Guild is a surgeon, and brought this suit against R. H. Whitlow to recover the sum of $1,000, alleged to be the balance due him upon a contract with the defendant for operating upon the latter's sister.

R. H. Whitlow defended the suit on the ground that he had not made the contract sued on, and that the contract he did make with the plaintiff was conditioned upon the operation upon his sister being successful, and that she died as the result of it within a few days. He had already paid the plaintiff $500 of his fee, and he made his answer a cross-complaint to recover this sum from the plaintiff.

Dr. W. A. Guild was the principal witness for himself. According to his testimony, he lives in Des Moines, Iowa, and is a graduate physician and surgeon. He has license to practice in the States of Arkansas, Iowa, and Florida. In February, 1921, while at Hot Springs, Ark., he was called to Rogers, Ark., to see Mrs. Freeman, the sister of R. H. Whitlow, who was at that time in the sanitarium of Dr. Love. He arrived at Rogers on the morning of February 24, 1921, and, after consultation with Dr. Love, made an immediate examination of Mrs. Freeman. The defendant then came to the hospital and consulted with the plaintiff about the operation. The plaintiff had an agreement with the defendant about his fee for operating, and the defendant agreed to pay him $1,500 for the operation. Dr. Love was present at the time. Mrs. Freeman was too sick to be consulted about the matter. The plaintiff then operated upon Mrs. Freeman, and was assisted by Dr. Love and two other physicians. After the operation was performed the defendant gave a check to Dr. Love for $500, which was indorsed by Dr. Love to the plaintiff. At the same time

the defendant told the plaintiff that he would see that the balance of the $1,000 was in Des Moines by May 1, and said that the plaintiff need not write to him about the matter. The plaintiff denied that there was any agreement that the operation would be successful, or that his fee was in any way conditioned upon the success of the operation. The plaintiff explained the difficulties of the operation to Mr. Whitlow as best he could. He was informed by Whitlow, and it was an evident fact, that Mrs. Freeman was addicted to the use of morphine. He performed the operation in good faith, under the agreement made with Whitlow that the latter would pay him $1,500 for his services. The testimony of the plaintiff was corroborated by that of Dr. Love and Susan A. Lowdermilk, a nurse, who attended Mrs. Freeman at Dr. Love's sanitarium. Evidence for the plaintiff also showed that the operation was performed in a skillful manner.

R. H. Whitlow was the principal witness for himself. According to his testimony, he went to Texas and brought his sister, Mrs. Mary Freeman, to his home at Rogers, Ark., in January, 1921. Dr. Love was his family physician, and was called to see her. In February, 1921, Mrs. Freeman was carried to the sanitarium of Dr. Love in Rogers. Dr. Love advised the defendant that his sister needed an operation badly, and, owing to his confidence in Dr. Love, the defendant told him that the case was in his hands, as far as he was concerned. The defendant, however, would not consent to an operation until he had taken the matter up with Mrs. Freeman's husband. Dr. Love suggested Dr. Guild as the best man to perform the operation. Dr. Love then sent for Dr. Guild to come to Rogers. After Dr. Guild had arrived and examined Mrs. Freeman, the defendant was sent for. Dr. Guild told him that an operation was necessary, and would cure Mrs. Freeman. Dr. Guild told defendant that the price of his services would be $1,500. The defendant told Dr. Guild that neither he nor Mrs. Free-

man's husband was in a position to pay $1,500. Dr. Guild said that was all right, and that he would perform the operation any way. Dr. Guild told the defendant that the operation would absolutely cure Mrs. Freeman; that he knew that her condition would be easily remedied by the operation, and stated that, within two or three weeks, she would be able to go out driving in an automobile. Dr. Guild told him that $1,500 was a reasonable fee for the operation. The defendant paid $500, upon the reliance of the statements of Dr. Guild in reference to his sister's condition and the success of the operation. In other words, Dr. Guild warranted that the operation would be successful. The defendant was ignorant of what would constitute a reasonable charge for an operation of this kind, and relied upon the statement of Dr. Guild that $1,500 was a reasonable fee. After the operation was over, and at the time the defendant paid Dr. Guild the $500, he told him that, if his sister got well and that the result of the operation was such as Dr. Guild told him it would be, he would see that he got a thousand dollars additional by the first of May.

Several physicians and surgeons testified that $200 or $250 would have been a reasonable fee for an operation of that kind. Mrs. Freeman died, as the result of the operation, in two or three days.

The jury returned a verdict in favor of the defendant, on his cross-complaint, for $250. The case is here on appeal.

*Sullins & Ivie,* for appellant.

The court erred in giving instruction No. 9 requested by the defendant. Where a valid contract has been made as to the amount of compensation to be paid for medical services, no question as to the actual value of the services can arise. 30 Cyc. 1599; 97 N. Y. Supp. 389; 91 N. W. 322.

*Duty & Duty,* for appellee.

Ruling not urged or discussed in the brief of counsel will be deemed to have been waived. 108 Ark. 357; 90

Ark. 608   In the absence of an express agreement, a physician or surgeon is entitled to reasonable compensation for his services.   83 Ark. 601.   Where an express agreement is made, but it is shown that such contract is obtained by undue influence, or by fraud or imposition, or where it is shown that the compensation is so clearly excessive as to amount to extortion, the courts will protect the party aggrieved and will grant relief.   110 U. S. 42; 84 Ark. 575; 15 Am. Dec. 572; 201 Ill. 86; 23 Kans. 474. Instruction No. 9 was correctly given.   110 U. S. 42.

HART, J., (after stating the facts).   The theory of the plaintiff was that he had made an express contract with the defendant whereby the latter agreed to pay him the sum of $1,500 for operating on Mrs. Freeman, the defendant's sister.   He seeks to recover the balance due him under the contract.

On the other hand, it was the theory of the defendant that the plaintiff was not entitled to compensation unless the operation was successful and the patient was entirely cured.

Special contracts with physicians or surgeons upon the principle of "no cure, no pay," are generally held valid.   They are conditional contracts, and there seems to be no reason why a physician may not enter into a contract whereby his right to compensation may be dependent upon his curing the patient entirely by treatment or by operating upon him.   *Jones* v. *King,* 81 Ala. 285; *Mock* v. *Kelly,* 3 Ala. 387; *Hollywood* v. *Reed,* 57 Mich.   234; *Fisk* v. *Townsend,* 7 Yerger (Tenn.) 146; *Smith* v. *Hyde,* 19 Vt. 54, and *Dye* v. *Corbin* (Sup. Ct. of Appeals W. Va.) 53 S. E. 147.

In *Henderson* v. *Hall,* 87 Ark. p. 1, the plaintiff sought to recover for medical services under an express contract to pay a certain sum.   The defendants admitted having employed the plaintiff, but denied having agreed to pay him any particular sum.   The court held that it was not error to instruct the jury that, if defendant agreed to pay the sum named, they should find for plain-

tiff accordingly; but, if there was no contract for any certain amount, the jury should find for the plaintiff a reasonable compensation for the services rendered.

Thus it will be seen that it is well settled that a physician or surgeon may make an express contract whereby he is to receive a stipulated sum for his services, or he may make a special agreement to cure his patient by an operation or, in case he fails to do so, to receive no pay.

The respective theories of the parties, under the principles of law decided above, were submitted to the jury, in certain instructions given by the court. In this connection it may also be stated that, under the testimony of the plaintiff, the agreement of the defendant was an original undertaking, and not a collateral one within the statute of frauds. In *Cleveland* v. *Maddox,* 152 Ark. 538, the plaintiff testified that defendant employed him to perform a surgical operation on his adult son, and told the plaintiff that he would pay the bill, and it was held that the evidence was sufficient to sustain the finding that defendant's undertaking was an original one.

It is claimed by counsel for the plaintiff that the court gave an instruction which ignored these principles of law. The instruction complained of is No. 9, and reads as follows: "Although you may find that defendant is primarily liable upon the contract sued on, still, if you find and believe, from a preponderance of the evidence, that Whitlow was induced to agree to pay $1,500 for the operation upon Mrs. Freeman in reliance upon the representation of plaintiff that $1,500 was a reasonable charge for such character of surgical services; that defendant believed said representations, and did not himself know whether said charge was reasonable for such services; and you further find that a charge of $1,500 was excessive and exorbitant for such services, then defendant would only be liable for a reasonable fee for the services performed, and, if he has paid more

than you find is a reasonable compensation for such services, then he is entitled to recover any excess paid, as shown by the proof. And, in determining what is a reasonable fee, you will take into consideration the skill and care and expense required and used in the diagnosis of, preparation for and execution of the operation, but you are not authorized to diminish a reasonable fee because of the fact that Mrs. Freeman died following the operation, unless there was a warranty of the result, as explained in these instructions.''

We think this assignment of error is well taken. It will be noted that the instruction tells the jury that, although it may find that the defendant is liable upon the contract sued on, still if he agreed to pay $1,500 for the operation upon his sister, in reliance upon the representations of plaintiff that this was a reasonable charge for the operation, and that, if defendant believed this to be true, and did not know whether the charge was reasonable or not, and the jury should further find that $1,500 was an excessive fee, then the defendant would only be liable for a reasonable fee, and would be entitled to recover any excess paid, as shown by the proof. It was error to narrow the inquiry by instructing the jury that the right of the plaintiff to recover under the contract depended upon whether he represented to the defendant that $1,500 was a reasonable fee, and the defendant, in ignorance of what was a reasonable fee, believed the representations to be true. This tended to concentrate the mind of the jury upon a single question and to place too narrow a limit upon the plaintiff's right to recover.

As we have already seen, when the contract was made, no confidential relation existed between the parties, and a contract for the amount of fee to be charged by a surgeon is valid and unobjectionable, and will be enforced, unless there are special circumstances from which it appears that it was induced by fraud or some improper or undue advantage over the patient or the

person employing the surgeon. There may be cases where, from the nature of the transaction and the situation of the parties, fraud and imposition may be inferred from the representations of the surgeon that his fee was reasonable. Such a case would be where there was necessity for an immediate operation and no other surgeon was available. Such a case might also be presented where a party was induced to go to the sanitarium of another and was persuaded that an immediate operation was necessary to save the life of a patient. It may be stated that, in any case of emergency, where the patient or the person making a contract for the patient was laboring under such great excitement or distress of mind that an unconscionable advantage has been taken of him, then the contract will be set aside on the ground of fraud, and recovery for services will only be allowed upon a *quantum meruit*.

Here none of these elements existed. There was no necessity for an immediate operation. No emergency existed. The defendant was at home, and his sister was in a hospital in the same town. If he made the contract testified to by the plaintiff, he did so of his own volition. He did not ask Dr. Love if the fee was reasonable. There was another physician in the city who had attended his sister. He had time to have consulted him about the reasonableness of the fee. He did neither. If he made the contract as testified to by the plaintiff, his only ground for setting it aside on the ground of fraud is that it was unreasonable. This is not sufficient. It cannot be said that the contract was procured by fraud because the plaintiff charged more than other physicians and surgeons would charge for a similar operation in the same city. There must be some mental distress caused by the attending circumstances which would constitute constructive fraud because the party seeking to enforce the contract had taken an unconscionable advantage of one who had the right, under the circumstances, to rely upon his representations that the fee was a reasonable one.

This principle was recognized in the case of *Cotnam* v. *Wisdom,* 83 Ark. 601. In that case a surgeon was called in to attend a person injured in an accident, and, in an effort to save his life, performed an operation on him while he was unconscious. The patient died without regaining consciousness, and the law implied a contract on his part to pay a reasonable compensation to the surgeon.

The same principle would apply to a helpless man, without friends to aid or advise him, who would be induced to make an unconscionable contract with a physician or surgeon in order to save the life of himself or some one near to him.

It follows that the court erred in giving instruction No. 9 to the jury, at the request of the defendant, and for that error the judgment must be reversed, and the cause remanded for a new trial.