CONNOR *v.* RICKS, MAYOR.

4-8661                                    212 S. W. 2d 552

Opinion delivered June 28, 1948.

*Curtis L. Ridgway* and *Ernest Maner,* for appellant.

*Leland F. Leatherman,* for appellee.

GRIFFIN SMITH, Chief Justice. This is an appeal from Chancery Court's refusal to enjoin Hot Springs officials from paying public funds to George Callahan as

Chief of Police, and to restrain Callahan from receiving such payments. The legal question is whether Callahan's appointment was valid.

The petition alleges that Leland Leatherman, G. C. Smith, and Herbert Brenner, as a Board of Civil Service Commissioners, proceeded in an illegal manner April 26, 1948, when Callahan was selected, in that they disregarded mandatory provisions of Civil Service Rules, and Act 28, approved February 13, 1933.

Act 28, applicable to Cities of the First Class having a police department, and to all Cities having organized fire departments, directs that at the first regular meeting of the Council or governing body after the Act became effective a Civil Service Commission be established in the manner outlined. Section 3, in language ordinarily construed to be mandatory, is a commission to the Board to "prescribe, amend, and enforce rules and regulations governing the . . . departments"; and it invests the rules with force of law.

Certain "must" provisions are included in the Act, subdivision 4 of § 3, and § 6, being applicable to the controversy before us.

Not until March 14, 1947—nearly fourteen years after Act 28 received approval—did the City of Hot Springs give attention to the measure. Then, by Ordinance No. 2141, the Board was created, with a recital in the Ordinance that it was the duty of the Council to elect Commissioners. There were subsequent changes in personnel.

On May 2, 1947, the Council approved rules and regulations submitted by the Board.

Earl Ricks is Mayor of Hot Springs. Acting, as he thought, upon legal authority, he appointed George Callahan Chief of Police. The Mayor's right to appoint was challenged in a Chancery proceeding. On appeal it was held, on authority of *Stout* v. *Stinnett,* 210 Ark. 684, 197 S. W. 2d 564, that power of appointment had been transferred from the Mayor to the Civil Service Commission. *Connor* v. *Ricks, Mayor,* 212 Ark. 833, 208 S. W. 2d 10.

With this Court's holding (February 2, 1948) that the Mayor was without authority to appoint, Callahan was named Commissioner of Public Safety for Hot Springs. This action was successfully challenged in Chancery Court, without appeal.

April 26, 1948, the Board appointed Callahan Chief of Police, and he immediately entered into the discharge of his duties. Shortly thereafter Bert Connor and James Shannon, as taxpaying citizens and electors, asked Chancery Court for an injunction, the granting of which would have been predicated upon a finding that the Board was without power to select Callahan because of his ineligibility.

Testimony of Leland Leatherman as Secretary of the Board is that at a regular meeting of the Board February 23, 1948, the Secretary was directed to cause publication of notice through local newspapers, and by posting at the City Hall, that examinations would be held April 5th for establishment of eligible lists from which original appointments and promotions would be made for Fire and Police departments. Such notices were published, as directed.

The Board, in promulgating rules and regulations, had adopted with but slight changes what were known to be standard or uniform rules, etc., under which Little Rock and many other Cities had supervised personnel of the two departments. Members of the Hot Springs Board, in order to become better informed regarding procedural matters found to be advantageous elsewhere, applied extensively for information, and in particular wrote the World Book Company, the United States Civil Service Commission, and International Association of Police Chiefs, for material and suggestions. Professor J. B. Johns, who had formerly served as director of Hot Springs Business College, was asked to conduct written phases of the examinations.

It is argued in appellee's brief that inasmuch as Hot Springs has an annual floating population of more than a quarter of a million persons, many of whom are expert

criminals, such as Frank Nash, Verne Miller, Louis Buchalter, and associates, (see *State* v. *Richetti*, 342 Mo. 1015, 119 S. W. 2d 330; *People* v. *Buchalter*, 289 N. Y. 181, 45 N. E. 2d 225) the police chief should possess unusual ability, hence the applicability of that part of § 6 of Act 28 authorizing the Commission to suspend competition if the vacancy to be filled requires "peculiar or exceptional qualifications of a scientific, professional or expert character." This power reposes in the Commission when there is satisfactory evidence that competition is *impracticable,* and that the position *can* best be filled through selection of one not in the line of promotion provided for by Act 28.

Callahan took an examination held December 1, 1947, but the position to be filled was that of patrolman, and it is not contended this test satisfied the letter of the law, although Callahan was subjected to other tests. Appellants' entire case rests upon the belief that Callahan was promoted without being on an eligible list.

Section 10 of the Hot Springs Civil Service Rules is a substantial compliance with § 6 of Act 28, some parts of the statute having been copied; but to the language of § 6 there was added: "In filling [vacancies requiring peculiar or exceptional qualifications of a scientific, professional or expert character] the person so selected will not be required to meet the qualifications set out elsewhere in these rules and regulations as to residence, citizenship, age, weight, and height, but he shall undergo a medical examination and satisfy the Commission as to his mental and physical fitness for the position the same as is required of other applicants elsewhere in these rules [,] and the Commission need only satisfy itself, in any way it deems best, that the person so selected is the best one available under the circumstances to fill the position for which he is selected."

Subdivision 4 of § 3, Act 28, deals with creation of eligible lists for each rank of employment for the fire and police departments. It renders ineligible "for examination for advancement" any who have not served at least a year in the lower rank, " . . . except in case of

emergency, *which emergency shall be decided by the Board of Commissioners."*

Effect of what the Commission did was to hold (a) that there was no eligible list from which selection of a Chief of Police could appropriately be made, and (b) that the long delay in putting Act 28 into use created an unusual condition, perhaps without precedent, justifying recourse to discretionary powers conferred by subdivision 4 of § 3, and § 6.

In the very thorough and comprehensive brief submitted by appellants' counsel it is argued, in purpose, that the exceptions mentioned in § 6 of Act 28 must be construed in the true sense of words used—"scientific," "professional," or "expert," and that Callahan does not qualify in respect of either term. This belief, however, rests upon the assumption that it was the Commission's duty to present evidence in support of its discretion—this under the general rule that if rights are claimed through a statutory exception it must affirmatively appear that one who relies on the exception has the burden of showing that he comes within it.

There is language in subdivision 4 of § 3 placing a very broad discretion in the Commission, for the Act says that the emergency there contemplated "shall be decided by the Board." But even so, it is not to be presumed that the lawmakers intended to invest the Commission with arbitrary powers. A discretion is exactly what the word implies: the exercise of a privilege, right, or power consonant with reason and good judgment. It was defined by Coke in *Rooke's case,* 40 Eliz., as a science of understanding, to discern between falsity and truth, between wrong and right, between shadow and substance, between equity and colourable glosses and pretenses, "and not to do according to their wills and private affections."

The Kansas Supreme Court, in *State* v. *Tindall,* 210 Pac. 619, 112 Kan. 256, said of discretion as applied to public functionaries, that it is a power or right, conferred by law, to act officially in certain circumstances according to the dictates of their own judgment and conscience, un-

controlled by the judgment or conscience of others, and "It perverts and destroys the meaning of the word to hold that exercise of discretion may be reviewed or controlled by some other person or tribunal than the person on whom it is conferred."

So, in the case at bar, the Legislature must have contemplated that extraordinary circumstances might arise in the administration of police and fire departments calling for abandonment of the hard and fast rule as expressed by letter of the law, and the substitution of that fine sense of discretion which in legal contemplation a board or commission will exercise when power to act in a particular circumstance is reposed in individuals constituting the agency thus created. Discretion is never controlled by a so-called higher authority. It is the *abuse* of power that calls for supervision; and when abuse occurs discretion ends.

Coupled with the contention that the Board has not produced evidence that an emergency existed there is the argument that in any event a permanent appointment of the kind in question could not be made, and when the emergency ends Callahan's tenure terminates. If it be conceded that the appointment cannot last beyond the emergency, we must assume this to be the Commission's intention. A situation somewhat similar occurred when the judiciary was called upon to construe § 9 of art. 19 of the Constitution. It prohibits the General Assembly from creating any permanent State offices "not expressly provided by the Constitution." The decision in *Greer* v. *Merchants & Mechanics Bank,* 114 Ark. 212, 169 S. W. 802, was that in the absence of a legislative declaration that an office it created *was* permanent, Courts would indulge the presumption that permanency was not intended, and this would be true whether duration of the office was fixed in the Act, or if nothing whatever was said in respect of time. There are other similar cases.

By the same reasoning we must assume that the Commission does not intend Callahan's occupancy of the position to continue beyond the emergency.

In providing Civil Service machinery for police and fire departments, as expressed in Act 28, the General Assembly's policy was to promote efficiency, hence better public service, by eliminating the so-called "spoils system" and substituting mandatory examinations to determine relative qualifications, and to require that promotions be made from a lower to a higher bracket—this upon the supposition that it was difficult to efficiently substitute for experience gained through application to a particular task.

If, when Act 28 was approved, Hot Springs—without unreasonable delay—had established a Civil Service Commission, then at least in contemplation of law the Police Department would have been a functioning organization, made so through examinations, tests, orderly compliance with the law's intent, and merited promotions. In consequence of the Council's conduct in treating the State's mandate as a dead letter, it cannot now be said that Mayor Ricks—who took office last year —and the Council he serves with, were not confronted with an emergency. It may not have been the exact complication contemplated by the lawmaking body when it undertook to provide flexibility to an otherwise rigid set of rules; but certainly the situation is unusual, and it is one that probably will not again occur.

From the Commission's actions it appears conclusive that difficulties occasioned by protracted municipal indifferences to legislative mandate created a difficult status, and one from which the newly-created Board could salvage the overall purpose in no more effective manner than through use of the personnel on hand, supplemented by the emergency appointment of a Chief, in the manner shown.

The Chancellor found that discretion was not abused, and we are unable to say he erred. It follows that the decree must be affirmed.