Roger HAASE *v.* C. Wayne STARNES, M.D.

95-892                                          915 S.W.2d 675

Supreme Court of Arkansas
Opinion delivered February 5, 1996

*Hartsfield, Almand & Grisham*, by: *Larry J. Hartsfield*, for appellant/cross-appellee.

*The Trammell Law Firm*, by: *Thomas F. Meeks* and *Robert Trammell*, for appellee/cross-appellant.

DONALD L. CORBIN, Justice. Appellant, Roger Haase, appeals an order of the Pulaski County Circuit Court granting summary judgment to appellee, C. Wayne Starnes, M.D., and dismissing without prejudice appellant's complaint for negligence and breach of express warranty. Thereafter, appellant filed a motion for reconsideration, which included a request for rulings on the constitutional challenges he made to the Arkansas Medical Malpractice Act, Ark. Code Ann. §§ 16-114-201 to -209 (1987 and Supp. 1995). Appellee filed a motion to correct the judgment to reflect that the dismissal of the complaint was with prejudice. The trial court entered an order denying both motions. From that order, appellant also appeals and appellee cross-appeals. This case was certified to this court as one involving a question about the law of torts. Ark. Sup. Ct. R. 1-2(a)(16). We find error in the part of the order granting summary judgment of the claim for expressed warranty and therefore affirm in part and reverse and remand in part. On cross-appeal, we modify the judgment to reflect that the dismissal of the complaint as to the claim for negligence was with prejudice.

Appellant filed a complaint against appellee alleging negligence and breach of express warranty arising from appellee's treatment of appellant for a series of hair transplants. Appellant

alleged that appellee placed advertisements stating "We guarantee you a full, growing head of hair for the rest of your life," and "Transplants guaranteed to grow for the rest of your life." Appellant asserted that he relied on such advertisements when he agreed to undergo a year-long series of hair transplants, grafts, and scalp reductions performed by appellee. Appellant further alleged that he suffered a severe infection during the course of appellee's treatment that resulted in a scar which is incapable of sustaining hair transplants.

Eventually, appellant stipulated that he would not offer expert testimony to show appellee failed to maintain the applicable standard of care. Thereafter, appellee moved for summary judgment, arguing that he was entitled to judgment as a matter of law due to the absence of expert testimony. Appellant responded to the motion, arguing that expert testimony was not necessary on the facts of this case and that proof of the applicable standard of care and breach thereof is not necessary to a claim predicated on breach of express warranty.

The trial court granted appellee's motion for summary judgment, ruling that, regardless of whether the "medical injury" resulted from negligence or breach of warranty, as long as it resulted from professional services rendered by a medical-care provider, the proof was governed by the Arkansas Medical Malpractice Act, and specifically section 16-114-206. Appellant asserts six arguments for reversal of that order.

## I. BREACH OF EXPRESS WARRANTY — BURDEN OF PROOF

The facts are not in dispute. As the trial court stated in its order, the question before it was one of law. On appellate review of such a case, we simply determine whether appellee was entitled to judgment as a matter of law. *National Park Medical Ctr., Inc.* v. *Arkansas Dep't of Human Servs.*, 322 Ark. 595, 911 S.W.2d 250 (1995).

As his first point for reversal, appellant argues that expert testimony is not necessary to establish a cause of action based on breach of express warranty where the breach can be proven from evidence that is within a jury's common knowledge. Appellant acknowledges that he seeks recovery for a "medical injury" as

defined by section 16-114-201(3), and that his burden of proof is therefore governed by section 16-114-206. He argues, however, that when section 16-114-206 is applied to his breach-of-warranty claim, he is placed in the ridiculous posture of being required to offer proof that appellee was *negligent* in order to prove that appellee *breached an express warranty.* In summary, appellant's first point has two components: one, he should not be required to prove negligence in this case in order to sustain a cause of action for breach of express warranty; two, expert testimony is not required in his case for breach of express warranty because the contract issue is within the common knowledge of lay persons.

Appellee responds that expert testimony is required regardless of whether a medical-malpractice plaintiff's claim is for negligence or breach of warranty, essentially because the general public is not knowledgeable regarding techniques and procedures for hair-transplant surgery. Appellee responds further that regardless of appellant's argument on this point, he is entitled to summary judgment because appellant did not plead nor offer proof of an express warranty made by him to appellant.

The trial court ruled that, if the injury complained of is a "medical injury," expert testimony is necessary to establish the standard of care and breach thereof and that proof is governed by section 16-114-206 regardless of whether the claim is for negligence or breach of warranty. Because appellant stipulated he would not offer expert testimony on the standard of care and breach thereof, the trial court ruled appellee was entitled to judgment as a matter of law.

The trial court's ruling was in error for two reasons. First, expert testimony is not necessary per se in every medical malpractice case. Our law is well-settled that expert testimony is required only when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, when the applicable standard of care is not a matter of common knowledge, and when the jury must have the assistance of experts to decide the issue of negligence. *Robson* v. *Tinnin,* 322 Ark. 605, 911 S.W.2d 246 (1995) (citing *Prater* v. *St. Paul Ins. Co.,* 293 Ark. 547, 739 S.W.2d 676 (1987)). To emphasize that expert testimony is not required in every medical-malpractice

case per se, we repeat a statement from *Graham* v. *Sisco*, 248 Ark. 6, 449 S.W.2d 949 (1970), that was quoted in *Davis* v. *Kemp*, 252 Ark. 925, 481 S.W.2d 712 (1972):

> The necessity for the introduction of expert medical testimony in malpractice cases was exhaustively considered in *Lanier* v. *Trammell*, 207 Ark. 372, 180 S.W.2d 818 (1944). There we held that expert testimony is not required when the asserted negligence lies within the comprehension of a jury of laymen, such as a surgeon's failure to sterilize his instruments or to remove a sponge from the incision before closing it. On the other hand, when the applicable standard of care is not a matter of common knowledge the jury must have the assistance of expert witnesses in coming to a conclusion upon the issue of negligence.

*Id.* at 926, 481 S.W.2d 712-13. This court has consistently applied this rule of law from the landmark case of *Lanier* to cases arising under the Arkansas Medical Malpractice Act. *See, e.g., Robson*, 322 Ark. 605, 911 S.W.2d 246.

■ The second reason the trial court's order was erroneous is because section 16-114-206 does not apply to actions for medical injury based on breach of express warranty when the issue is whether the medical-care provider guaranteed the results. To so apply section 16-114-206 would defy common sense and produce absurd results, and this court does not interpret statutes in that manner. *Rosario* v. *State*, 319 Ark. 764, 894 S.W.2d 888 (1995). There is no doubt that, as appellant concedes, his claim for breach of warranty is included in section 16-114-201's definitions of "action for medical injury" and "medical injury":

> (1) "Action for medical injury" means any action against a medical care provider, whether based in tort, contract, or otherwise, to recover damages on account of medical injury;
>
> . . . .
>
> (3) "Medical injury" or "injury" means any adverse consequences arising out of or sustained in the course of the professional services being rendered by a medical care

provider, whether resulting from negligence, error, or omission in the performance of such services; or from rendition of such services without informed consent or in *breach of warranty or in violation of contract*; or from failure to diagnose; or from premature abandonment of a patient or of a course of treatment; or from failure to properly maintain equipment or appliances necessary to the rendition of such services; or otherwise arising out of or sustained in the course of such services. [Emphasis added.]

And it is true that section 16-114-206(a) purports to establish the burden of proof in *any* action for medical injury:

(a) In any action for medical injury, the plaintiff shall have the burden of proving:

(1) The degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he practices or in a similar locality;

(2) That the medical care provider failed to act in accordance with that standard; and

(3) That as a proximate result thereof, the injured person suffered injuries which would not otherwise have occurred.

However, the three requirements of section 16-114-206(a), namely the "degree of skill and learning ordinarily possessed and used by members of the profession," failure to "act in accordance with that standard," and "proximate result," typify three requirements of a cause of action sounding in tort: duty, breach, and cause. These three requirements have no relevance in a contract-based cause of action arising out of a guarantee of specific, favorable results. The standard of care used by medical-care providers in similar communities and situations simply has no relevance in a case where the sole issue is whether a medical-care provider breached this particular express warranty. Plainly, the trial court's construction of sections 16-114-201 and -206 achieves an absurd result that was not intended by the General Assembly. It would defy common sense to conclude that the

General Assembly, by recognizing claims for breach of warranty and contract in its definition of "medical injury," intended to establish a burden of proof consisting solely of tort-based elements in a warranty case based on a guarantee.

When stating the rule of law as to a physician's duty to his patient, courts have said that in the absence of a special contract or express warranty, the physician does not warrant the success of his treatment but only that he or she will follow the applicable standard of care. *See generally* Jack W. Shaw, Jr., Annotation, *Recovery Against Physicians on Basis of Breach of Contract to Achieve Particular Result or Cure*, 43 A.L.R.3d 1221, § 5 (1972 & Supp. 1994). However, when courts have been presented with an allegation that a special agreement or express warranty was made and breached, such as we have here, the contract actions were allowed and analyzed on contract law rather than negligence law. *See, id.* (citing *Compasano* v. *Claiborn*, 2 Conn. Cir. 135, 196 A.2d 129 (1963)).

We therefore conclude there is merit in appellant's argument that the trial court's application of section 16-114-206 to his claim for breach of express warranty put him in the ridiculous posture of having to prove negligence in order to sustain his contract claim for breach of express warranty regarding the results and therefore was error. Accordingly, we reverse and remand that part of the trial court's order granting summary judgment to appellee on the breach-of-warranty claim due to appellant's failure to satisfy section 16-114-206.

We noted earlier that, as an alternative means of affirming the summary judgment in his favor, appellee contends that appellant failed to allege or prove appellee made an express warranty. In support of this contention, appellee cites *Brumley* v. *Naples*, 320 Ark. 310, 896 S.W.2d 860 (1995), a case in which we recently affirmed a summary judgment in favor of a physician who was sued for breach of contract. *Brumley* is distinguished from the present case on two bases: one, *Brumley* involved a breach-of-contract claim rather than a breach-of-express-warranty claim; and two, *Brumley* did not involve advertisements espousing guarantees as does the present case. While it is true that appellant stated in his deposition that appellee made no other representations to him than those in the advertisements

that appellant observed in a men's restroom and in the telephone directory's yellow pages, appellee nevertheless made the representations in the advertisements and appellee does not dispute this. Attached to appellant's response to the motion for summary judgment was appellee's deposition wherein he stated he placed the alleged advertisements in the yellow pages and in men's rooms and ladies' rooms in restaurants in Little Rock, Conway, Hot Springs, Jacksonville, and Shreveport. Copies of the alleged advertisements were also attached to the response. Appellant stated in his deposition, which was also attached to his response, that he discussed the advertisements with appellee and that they discussed the particular procedures appellee performed on the man depicted in the advertisements as similar to the procedures appellee would perform on appellant. Moreover, appellant alleged in his complaint that he relied on the advertisements.

Due to the erroneous ruling on the application of section 16-114-206 to appellant's breach-of-warranty claim, the trial court did not rule on the issue of whether the advertisements were express warranties made by appellee. While we are not aware of any Arkansas law directly on point, we are well aware that it has long been the law in this state that physicians may make an express contract with a patient whereby the physician makes a special agreement with the patient or promises to cure the patient. *Guild* v. *Whitlow*, 162 Ark. 108, 257 S.W. 383 (1924). The General Assembly was no doubt aware of this rule of law when it included breach of warranty and contract in the definitions of actions for medical injury. Likewise, we are aware that under the Uniform Commercial Code, which we acknowledge is not applicable to a contract for services by a physician but nevertheless provides guidance on contract principles by analogy, this court could not say as a matter of law that no express warranty had been made when a seller of goods placed advertisements of his goods relating to their quality. *Little Rock School Dist.* v. *Celotex Corp.*, 264 Ark. 757, 574 S.W.2d 669 (1978). Consequently, because appellant did indeed plead and offer some proof of an express warranty made by appellee, and because appellant alleged by complaint that he relied on the advertisements in receiving treatment, we cannot affirm the summary judgment on the basis that appellant failed to plead or prove that a contract or express warranty existed.

In summary, the trial court erred in concluding as a matter of law that expert testimony is required per se in every action for medical injury. It erred further by applying section 16-114-206 to the claim for breach of express warranty and thereby terminating the breach-of-warrranty claim without considering and applying principles of contract and warranty law.

## II. WAIVER OF DEFENSES

■ Appellant's second point on appeal is his contention that a medical-care provider waives the protection afforded by the Arkansas Medical Malpractice Act when the medical-care provider makes an express warranty with respect to the success or results of a particular treatment. We do not address the merits of this point due to appellant's failure to obtain a ruling on this issue from the trial court thereby waiving the issue on appeal. *Brumley*, 320 Ark. 310, 896 S.W.2d 860.

■ Appellant's remaining arguments for reversal raise constitutional challenges to the Arkansas Medical Malpractice Act. It is well-settled that no constitutional issues are decided except those that are necessary to a decision in the specific case at hand. *Gay v. Rabon*, 280 Ark. 5, 652 S.W.2d 836 (1983). The burden-of-proof provision, section 16-114-206, is the only provision of the Act that the trial court applied to appellant's detriment in this case. Therefore, section 16-114-206 is the only part of the Act that appellant has standing to challenge. Furthermore, our decision that the trial court erred in applying section 16-114-206 to appellant's breach-of-warranty claim, however, limits our review of appellant's remaining arguments to the negligence claim.

## III. FEDERAL CONTRACT CLAUSE

■ Appellant's third argument for reversal is that the Arkansas Medical Malpractice Act impairs his right to contract and therefore violates the United States Constitution, art. 1, § 10, cl. 1, the so-called "contract clause." It is well-settled that the contract clause is not to be construed literally, rather it is construed to allow a state to exercise its police powers. *See, e.g., Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978). However, the contract clause does "impose *some* limits upon the power of a State to abridge *existing* contractual relationships,

even in the exercise of its otherwise legitimate police power." *Id.* at 242 (emphasis added). The operative facts of this case occurred well after the passage of the Arkansas Medical Malpractice Act in 1979. Thus, even assuming *arguendo*, that appellant and appellee had a contract, it was not an existing contract when the General Assembly enacted the Arkansas Medical Malpractice Act and section 16-114-206. Accordingly, we cannot say section 16-114-206 violated the contract clause in this case.

## IV. EQUAL PROTECTION.

Appellant's fourth argument for reversal is that the Arkansas Medical Malpractice Act violates the equal-protection clauses of the United States and Arkansas Constitutions. U.S. Const. amend. 14; Ark. Const. art. II, § 18. Appellant contends the Act, in its entirety, denies equal protection of the laws to medical-malpractice plaintiffs because it, among many other things, grants medical-care providers immunity from civil "self-incrimination," imposes a standard of proof far above that required for other professionals, adopts the shortest statute of limitations for medical-care providers than for any other professional malpractice claims, and establishes a scheme for the payment of damages that is not available to other professionals.

The only argument appellant articulates under this point that could relate to section 16-114-206 is that the Act adopts "a standard of proof well far and above that required of other professionals in our society[.]" Appellant does not make any convincing argument for such a contention, and because section 16-114-206 does no more than state the common-law elements of a claim for negligence in the medical-malpractice context, it is not apparent to us without further research that the argument is well-founded. We do not address such arguments. *Equity Fire and Cas. Co.* v. *Needham*, 323 Ark. 22, 912 S.W.2d 926 (1996).

## V. SPECIAL LEGISLATION

Appellant's fifth argument for reversal is that the Arkansas Medical Malpractice Act violates the prohibition against special legislation as stated in the Arkansas Constitution, art. 5, § 25. Appellant does not rely on Amendment 14 to the

Arkansas Constitution. The clause at issue here prohibits the General Assembly from enacting a special law where a general law can be made applicable. It is well-settled that the clause at issue here is not mandatory, rather it is directory or merely cautionary as applied to the General Assembly. *See, e.g., Greer* v. *Merchants & Mechanics Bank*, 114 Ark. 212, 169 S.W. 802 (1914). In other words, this clause is classified as one that leaves compliance to the discretion of the General Assembly. *Id.* Therefore, appellant's fifth point is entirely without merit.

## VI. SEPARATION OF POWERS

Appellant maintains that section 16-114-206(a) is in direct conflict with Ark. R. Evid. 702. He phrases the issue as one of the rule's permissible expert testimony versus the state's mandatory expert testimony and contends that the rule must be held to have superseded the statute.

Appellant's argument is based on a false premise. There is no provision of section 16-114-206(a) that mandates the presentation of expert testimony. Rather, it is the facts of any given case that determine whether expert testimony is required in a medical-malpractice claim for negligence. Accordingly, appellant's sixth point for reversal is without merit.

## CROSS-APPEAL

As cross-appellant, appellee argues the trial court erred in denying his motion to correct the judgment so that appellant's complaint would be dismissed with prejudice. The trial court's order denying appellee's motion specifically states that the complaint does indeed state a cause of action, but must fail because of a failure of proof. The order also states that it is within the trial court's discretion to enter summary judgment either with or without prejudice. In that respect, the order is erroneous.

The questions of whether a complaint states a cause of action and whether a plaintiff has failed to offer sufficient proof of a cause of action to survive a defendant's motion for summary judgment are questions of law with respect to which trial courts have no discretion. This court has discussed the effect of a summary-judgment dismissal on a plaintiff's ability to re-file a complaint:

> [S]ummary judgment based upon a failure to state a claim upon which relief can be granted is different from a summary judgment based upon a lack of disputed material facts, which results in a party's entitlement to the judgment as a matter of law. The first is the failure to *state* a claim, the second is the failure to *have* a claim. When summary judgment is granted upon failure to *have* a claim, and the ruling is affirmed on that basis, the matter is ended with prejudice. However, when summary judgment is granted in the trial court because of failure to *have* a claim, but is affirmed on the basis of failure to *state* a claim, we modify to make the dismissal without prejudice in order to afford the plaintiff-appellant a chance to plead further. *Ratliff* v. *Moss*, 284 Ark. 16, 678 S.W.2d 369 (1984); ARCP Rule 12(j).

*West* v. *Searle & Co.*, 305 Ark. 33, 36, 806 S.W.2d 608, 610 (1991) (citations omitted). The trial court's order specifically states that it granted appellee's motion for summary judgment because appellant had not proven his case. In other words, appellant did not *have* a case. Consistent with *West*, the summary judgment should have been granted with prejudice, and we modify the judgment to so reflect.

On direct appeal, the part of the order granting summary judgment as to the claim for negligence is affirmed; the part of the order granting summary judgment as to the claim for breach of warranty is reversed and remanded. On cross-appeal, the order is affirmed as modified to reflect that the complaint be dismissed with prejudice as to the negligence claim.

DUDLEY and GLAZE, JJ., dissent.

ROBERT H. DUDLEY, Justice, dissenting. Roger Haase filed a medical malpractice action, which sounds in both tort and contract, against Dr. C. Wayne Starnes. Starnes holds himself out to be a specialist in hair transplant and scalp reduction surgery. In his complaint, Haase alleged that Starnes advertised, "We guarantee you a full, growing head of hair for the rest of your life" and "Transplants guaranteed to grow for the rest of your life." Haase alleged that, as a result of his reliance on the advertisements, he contracted with Starnes to perform a series of hair transplants, grafts, and scalp reductions, and that during the

course of the treatments, his scalp became infected, which caused a "permanent scar on his head which is incapable of sustaining hair transplants." He concluded by alleging that Starnes breached the "representations and warranties" contained in his advertisements.

The complaint sounds in both tort and contract. Both the tort and the contract allegations are for a "medical injury." "Action for medical injury" means any action against a medical care provider, *whether based in tort, contract, or otherwise,* to recover damages on account of medical injury. Ark. Code Ann. § 16-114-201(1) (1987). "Medical injury" means any adverse consequence sustained in the course of professional services being rendered by a medical doctor, "whether resulting from negligence, error, or omission in the performance of such services; . . . *or in breach of warranty or in violation of contract.*" *Id.* § 16-114-201(3).

The Medical Malpractice Act provides that it "applies to *all* causes of action for medical injury accruing after April 2, 1979, and as to such causes of action, it shall supersede any inconsistent provision of law." *Id.* § 16-114-202. Section 16-114-206(a) of the Arkansas Code Annotated provides the party having the burden of proof in *"any"* action for medical injury *"shall"* prove that the doctor failed to act in accordance with the degree of skill and learning used by other doctors in the same type of practice in the same or similar locality. *Id.* § 16-114-206(a)(1).

The trial court ruled that this was a suit for a medical injury and that it would be necessary for Haase to comply with the Medical Malpractice Act. Ark. Code Ann. §§ 16-114-201 to -209. Haase stipulated that at trial he would not offer expert testimony to prove that Starnes failed to maintain the proper standard of care of a doctor in the same or similar community. The trial court dismissed Haase's complaint without prejudice. The majority opinion then holds that the trial court erred in dismissing the contract claim. I dissent from that part of the holding.

1.

We have often said that when the language of an act is

clear and contains no ambiguity, we will interpret it to mean only what it provides. *E.g., Arkansas Bank & Trust Co.* v. *Douglas*, 318 Ark. 457, 885 S.W.2d 863 (1994). We have often written that the cardinal rule of statutory construction to which all other interpretive guides must yield is to give effect to the legislative intent. *Graham* v. *Forrest City Hous. Auth.*, 304 Ark. 632, 803 S.W.2d 923 (1991). In determining legislative intent, we have said that we look to the language of the act, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate matters. *McCoy* v. *Walker*, 317 Ark. 86, 876 S.W.2d 252 (1994).

The language contained in the act at issue is clear and certain. It provides that the Medical Malpractice Act *"shall"* apply to *"any"* and *"all"* actions for medical injury *"whether based in tort, contract, or otherwise"* and it shall apply to actions for *"breach of warranty or . . . violation of contract."* The majority opinion construes the act to mean that a contract action is not subject to the burden-of-proof provision.

The purpose of the act and the object to be accomplished by the Medical Malpractice Act and the legislative history are set out in the act's emergency clause, as follows:

> It is hereby found, determined and declared by the General Assembly that the threats of legal actions for medical injury have resulted in increased rates for malpractice insurance which in turn causes and contributes to an increase in health care costs placing a heavy burden on those who can least afford such increases and that the threat of such actions contributes to expensive medical procedures to be performed by physicians and others which otherwise would not be considered necessary and that this Act should be given effect immediately to help control the spiraling cost of health care.

Act 709 of 1979, § 11 (emergency clause). We have said the statute serves a valid purpose because it was enacted to prevent doctors from practicing "defensive medicine" and to help control the spiraling cost of medical care. *Gay* v. *Rabon*, 280 Ark. 5, 652 S.W.2d 836 (1983).

Statutes treating medical malpractice actions in both tort and contract together are not new. Earlier medical malpractice limitations acts discussed contract actions and tort actions in the same statute. Section 37-205 of the Arkansas Statutes Annotated provided that "all actions of contract or tort for malpractice . . . against physicians [and] surgeons . . . shall be commenced within two years."

We have often written that, in enacting statutes, the General Assembly is presumed to have known of court decisions on the same subject and is presumed to have acted with reference to those decisions. *J. L. McEntire & Sons, Inc.* v. *Hart Cotton Co., Inc.*, 256 Ark. 937, 511 S.W.2d 179 (1974). In enacting the Medical Malpractice Act and making it applicable to actions in both tort and contract, the General Assembly and the drafters of the act are presumed to have acted in reliance on our case of *Helton* v. *Sisters of Mercy of St. Joseph's Hospital*, 234 Ark. 76, 351 S.W.2d 129 (1961). There, the plaintiff filed a tort malpractice action against a hospital and then separately filed a breach of contract malpractice action against the same hospital. The tort and contract actions were consolidated. In the tort action, we held that the hospital was a public charity and therefore not liable. In the contract action, we wrote:

> We next come to the proposition of whether the hospital can be liable for the injuries sustained by the little girl on the theory that there was a breach of contract. There was no express contract setting out the duties and the obligations of the parties. Mr. Helton delivered his little girl to the hospital for the examination. At that time he signed an authorization for an examination to be made. In this written document neither party agrees to do anything, and it cannot be called a contract in any sense of the word. In order to invoke the doctrine that it was the duty of the hospital to use due care, and liability on its part for the failure to use such care, resort must be had to operation of law. In ordinary circumstances, no charitable institution being involved, the law would imply that it was the duty of the hospital to use due care, and there could be liability for the failure to use such care. But the law does not imply something that is against public policy. How can it be said that the law implies an obligation to

use due care, and liability for the failure to use such care, where the public policy of the state imposes no duty and liability in that respect? The *Cabbiness* case clearly points out that immunity of a charitable corporation for liability for negligence is so thoroughly established in this State that the doctrine has become a rule of property. In these circumstances we cannot say that the law implies that it is the duty of the hospital to use due care, and liability for not doing so. It would appear that if there is any implication supplied by law it would be that there is no liability for the failure to use due care. *"The law never implies an agreement against its own restrictions and prohibitions." Los Angeles Warehouse Co.* v. *Los Angeles County*, 139 Cal. App. 368, 33 P.2d 1058.

*Helton* v. *Sisters of Mercy of St. Joseph's Hosp.*, 234 Ark. at 81-82, 351 S.W.2d at 131-32 (emphasis added).

The General Assembly presumably read the foregoing to mean that a malpractice action is subject to the public policy of this state regardless of whether it is labeled an action in tort or a contract. The members of the General Assembly likely understood that a Medical Malpractice Act that was designed to limit the increase in medical care costs could, as a matter of public policy, be applied to both tort and contract causes of action. The General Assembly has the authority to limit malpractice actions for a legitimate state purpose. *Simpson* v. *Fuller*, 281 Ark. 471, 665 S.W.2d 269 (1984). As an additional factor, the General Assembly presumably considered all of the issues involved, and in addition to limiting costs of medical care, sought to avert personal financial disaster for physicians since a suit for breach of contract is usually not covered by malpractice insurance. Jack W. Shaw, Jr., Annotation, *Recovery Against Physician On Basis of Breach of Contract To Achieve Particular Result or Cure*, 43 A.L.R.3d 1221, 1227 (1972 & Supp. 1994).

In summary, the words "any action against a medical care provider, whether based *in tort, contract or otherwise*," have a clear meaning. The legislative intent was for compliance with the act whether the malpractice action was filed in contract or tort. It should be presumed that in drafting the act, the General Assembly was aware that our prior case law treats medical mal-

practice actions with a single public policy, regardless of whether the action is labeled tort or contract. Our case law provides that, while contract warranties may be implied by law, they should never be implied when it is against public policy to do so.

2.

From the foregoing, it seems undisputed that the burden-of-proof section of the Medical Malpractice Act, section 16-114-206, must be complied with in malpractice actions sounding in tort. In addition, when a person goes to a physician for medical services and the physician accepts that person as a patient, a contract is implied in law. This implied contract is governed by the Medical Malpractice Act. It would seem to be beyond any real dispute that, to apply the public policy and standard of care expressed in the Medical Malpractice Act, the same burden-of-proof section, 16-114-206, must be complied with in a malpractice action grounded on an a breach of a warranty implied by law. This is because the law should never imply a warranty that is contrary to public policy. The issue in this case, however, is whether the burden-of-proof section must be complied with in malpractice actions based on an express contact.

The majority opinion holds that a physician may bind himself to a specific result by express contract and when the physician breaches that contract, it is not necessary for the injured party to comply with the burden-of-proof section of the Medical Malpractice Act. There is no real dispute that ordinarily a physician may by express contract bind himself to perform a specific result with an operation. *See* Annotation, *Physician's or Surgeon's Warranty of Success of Treatment or Operation*, 27 A.L.R. 1250, 1255 (1923).

The first question is whether such a contract is contrary to the public policy expressed in the Medical Malpractice Act. Without discussing the matter in any of the myriad of possible details, it seems that the better policy is to hold that a physician should be able to enter into an express contract for specified results. It appears that all jurisdictions hold that, without an express contract, a physician does not contract to achieve a particular result. *See* Annotation, 43 A.L.R.3d at 1230. In addition, a number of jurisdictions have held that such an express contract will not be supported by the consideration paid for the physi-

cian's normal undertaking to use ordinary skill, but must be supported by a separate consideration. 43 A.L.R.3d at 1233. Haase did not plead any special consideration in this case, and the majority opinion tacitly rejects special consideration as an element of a contract for specified results.

The majority opinion holds, without meaningful discussion, that Haase's reliance on an advertisement constitutes an express contract for a particular result. As authority, it cites a warranty-of-goods case that involved the Uniform Commercial Code, *Little Rock School District* v. *Celotex Corp.*, 264 Ark. 757, 574 S.W.2d 669 (1978). However, other jurisdictions treat contracts for personal services of a physician as being different from ordinary goods. In light of the Medical Malpractice Act, it would seem reasonable to hold, as many other jurisdictions have done, that in order for there to be a valid express contract it must be supported by a separate consideration. *See, e.g., Sard* v. *Hardy*, 367 A.2d 525 (Md. App. 1976). Some jurisdictions require such a contract to be in writing. *See, e.g., Zapata* v. *Rosenfeld*, 811 S.W.2d 182 (Tex. App. 1991). The underlying reason for a written contract is obvious. A physician should, as a part of the treatment, reassure the patient that he or she will be all right and will get well, and because such statements are therapeutic they should not be discouraged by law. If such statements might form the basis of an express contract, they will not be made and their value will be lost.

Even when one accepts the majority opinion's holding that the reliance on an advertisement, without more, can constitute an express contract, the trial court was correct in dismissing this case. The express contract, as upheld in the majority opinion, was for a "full, growing head of hair for the rest of your life" and for transplants "to grow for the rest of your life." Starnes did not advertise, and therefore did not expressly contract, that the patient would not become infected. The alleged warranty did not mention infection. The allegation sounds in tort and comes within the purview of the Medical Malpractice Act. Haase next alleged that, as a result of the infection, he had a scar and that the scar is incapable of sustaining hair transplants. The advertisement assured that transplants would grow a full and growing head of hair for the rest of the patient's life. Haase does not allege that the transplants have not grown, nor does he allege

that he does not have a full head of hair. He alleges that he has a scar and that the scar will not sustain transplants. Thus, the trial court correctly dismissed the cause of action without prejudice, and left Haase free to plead further if, in fact, he has a valid cause of action based upon an express contract.

As an alternate ground for reversal, the majority opinion holds that, even if the burden-of-proof section of the Medical Malpractice Act should be applicable to this case, the trial court erred in ruling that expert testimony is necessary to prove Haase's case. The holding is simply incorrect. Surgical scalp reduction, hair transplantation, and infections as a result of such procedures, are not matters that lie within the common knowledge of jurors. Thus, expert testimony is necessary. *Robson* v. *Tinnin*, 322 Ark. 605, 911 S.W.2d 246 (1995).