DEPARTMENT OF HUMAN SERVICES; Division of
Social Services; Office of Long Term Care *v.* Sammie
BERRY

88-120                                          764 S.W.2d 437

Supreme Court of Arkansas
Opinion delivered February 13, 1989

*Steve Clark*, Att'y Gen., by: *William F. Knight*, Asst. Att'y Gen., for appellant.

*Darrell Graves*, for appellee.

*Martha M. Miller*, for amicus curiae Arkansas State Nurses Association.

TOM GLAZE, Justice. The appellee, Sammie Berry, is licensed by the State of Arkansas as a practical nurse and is also the owner-operator of a licensed residential care facility within this state. The appellant, Department of Human Services (DHS), through its Office of Long Term Care (OLTC), is empowered by law to make rules and regulations to control residential care facilities. Berry sought a declaratory judgment that certain regulatory provisions adopted by the OLTC were arbitrary and in conflict with the authority granted to the Arkansas State Board of Nursing to regulate the nursing profession. Those regulations adopted by the OLTC govern the administration of medicine in residential care facilities by owner-operators of such facilities. The trial court declared the regulations invalid, and from that judgment, appellant brings this appeal. We reverse.

When considering the validity of a regulation, the

court must give the regulation the same presumption of validity as it would a statute. *See Rowell* v. *Austin,* 276 Ark. 445, 637 S.W.2d 531 (1982). In reviewing the adoption of regulations by an agency under its informal rule-making procedures, a court is limited to considering whether the administrative action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. *Arkansas Pharmacists Assoc.* v. *Harris,* 627 F.2d 867 (8th Cir. 1980). A court will not attempt to substitute its judgment for that of the administrative agency. *Citizens to Preserve Overton Park, Inc.* v. *Volpe,* 401 U.S. 402 (1971). A rule is not invalid simply because it may work a hardship, create inconveniences, or because an evil intended to be regulated does not exist in a particular case.

In the present case, the OLTC bears primary responsibility to regulate and manage the many long term care facilities in Arkansas. The three basis types of facilities are (1) nursing homes, (2) residential care units and (3) adult care centers.[1] As previously noted, appellee owns and operates a residential care facility. Basically, in order to qualify for admittance to a residential care setting, a person must be ambulatory and able to evacuate the building under his or her own power within two minutes if an emergency arises. The person must also be able to self-administer his or her own medications and not require nursing care. Unlike residential care facilities, nursing homes provide services for those persons who need medical treatment or who can no longer self-administer medications or evacuate the facility in less than two minutes.

Because persons in nursing homes are given medication and medical treatment, those homes are required to chart and keep extensive records of each resident's health, medical history, physician orders and overall medical treatment. No such requirements are imposed upon residential care owners or operators. In addition, nursing homes are required to have pharmaceutical committees comprised of the medical director, consulting pharmacists, the director of nurses, and the administrator. This committee is to ensure the medications are being administered properly and are having the desired results.

---

[1] Adult care centers are not in issue in this cause.

Residential care facilities and the services they provide are clearly different from those provided in nursing homes. To aid in effectively monitoring residential care services, the OLTC promulgated Regulation 1901 (3) and (4), which are in issue in this cause and provide as follows:

3. Under no circumstances shall an operator or employee or anyone solicited by an operator or employee be permitted to administer any oral medication, injectable medications, eye drops, ear drops or topical ointments (both prescription and non-prescription drugs).

4. In addition, any owner and/or operator of a Residential Care Facility who is a licensed nurse who administers any medication to a resident will be in violation of operating an unlicensed nursing home.

Appellee contends, and the trial court held, that provisions 3 and 4 unlawfully restrict a licensed nurse from performing her nursing duties under state law as a licensed nurse and arbitrarily draw a distinction between a home health nurse and a nurse, like Berry, who also happens to own or operate a residential care facility. We disagree.

Provision 3, by its clear terms, merely prohibits a residential care operator or employee from administering medications to residents. Thus, the purpose is directed at regulating the daily operations of residential facilities—not the practice of nursing. Consistent with that purpose, the regulation recognizes that those persons residing in residential care facilities are not afforded the same protections or monitoring devices such as charting, record-keeping, and oversight pharmaceutical committees as are those persons residing in nursing homes. However, if the condition of a person in residential care worsens to the point he or she no longer meets the requirements of that type facility, that person would necessarily be transferred to a nursing home where the proper medical treatment can be extended the person and where monitoring devices are available to measure and control that treatment.

Appellee's arguments simply fail to recognize the legitimate distinction between the type care provided by nursing homes from that given by residential care facilities; neither do they acknowl-

edge the valid purpose the OLTC attempts to achieve by its enactment of Regulation 1901 (3). If appellant is not empowered to regulate residential care facilities in this manner, it seems readily apparent that extended medical treatment may be administered persons in such facilities without the monitoring safeguards required of nursing homes.

Home health nursing is available to residential care residents when they are in need of medical care. That type nursing care is extended under the supervision of a physician. However, appellee Berry counters by arguing that she is a nurse, and it is needless to call on outside nursing care when she can promptly and conveniently provide the same care to her residents. While there is some pragmatism in what Berry says, the OLTC must also be mindful that while she may well be a very excellent nurse, she is also an owner/operator who has an economic interest in the residential care facility. The sole interest of an outside home health nurse, on the other hand, is merely to provide for the immediate medical need of his or her patient. In this connection, we would quickly add that the record in this cause would indicate that the appellee runs an excellent facility and that no evidence exists that any actual conflict is present as a result of her being both a nurse and the owner of the facility. Even so, the OLTC is confronted with the prospects that such conflicts are apt to arise in the future if it becomes common practice for residential care facilities to employ staff nurses, thereby blurring the meaningful distinction between such residential care facilities and nursing homes.

■ Finally, we would add that the OLTC's regulation, particularly 1901 (7), takes into account that emergency matters do occur and provides that operators or employees of residential care facilities may administer medical treatment to a resident until the resident/patient can be transported to an appropriate medical facility. In sum, the agency, in promulgating Regulation 1901, was mindful of the medical needs of residents who meet the requirements of a residential care facility, and in every instance, required medical treatment is available to those residents. The regulation under attack in no way adversely affects the nursing profession, nor does it restrict a nurse's opportunity to practice his or her profession, except in the unique situation where that nurse either owns, operates, or is employed by a residential care facility.

To date, such a situation has obviously been rare indeed, and where that case should arise, we believe the state has shown a reasonable and legitimate purpose for regulating that residential facility as it has done under Regulation 1901.

█ The appellee also argues that provision 4 of the regulation set out above is invalid because it results in an arbitrary distinction between equally qualified members of the nursing profession, *viz.*, home health nurses and nurses who own or operate a residential care facility. For reasons already stated, we believe there is a reasonable and recognizable purpose for treating these two so-called classes of nurses differently. We do believe provision 4 is poorly worded since it omits physicians who may be owners or operators of residential care facilities and presumably such a physician/owner could administer medication and treatment to residents of his or her facility. However, no apparent reason is offered for excluding physicians, and while the appellant offers that it interprets provision 4 so as to *include* physicians, within proscription of the regulation, the provision clearly fails to mention physicians and most likely is defective for failing to do so.

For the above reasons, we reverse.

HOLT, C.J., and PURTLE, J., dissent.

JACK HOLT, JR., Chief Justice, dissenting. The appellee, Sammie Berry, is licensed by the State of Arkansas as a practical nurse and is the owner-operator of a licensed residential care facility. Berry has owned and operated such a facility in this state for approximately eight years and has served as the Residential Care Association's president.

Berry sought a declaratory judgment that provisions 3 and 4 of Regulation 1901 were arbitrary and in conflict with the authority granted to the Arkansas State Board of Nursing to regulate the nursing profession. The trial court declared the regulations invalid. Yet, the majority of our court finds that the regulations have a valid purpose—to restrict extended medical treatment which might be administered in residential care facilities without the monitoring safeguards required of nursing homes.

The provisions of Regulation 1901 which are relevant to this

appeal provide as follows:

1. Any medication required by a resident of a facility must be self-administered by the resident.

2. A resident shall be supervised as necessary in administration as described below:

a. The resident may be reminded of the time to take the medication.

b. The medication regimen as indicated on the container label may be read to the resident.

3. Under no circumstances shall an operator or employee or anyone solicited by an operator or employee be permitted to administer any oral medication, injectable medications, eye drops, ear drops or topical ointments (both prescription and non-prescription drugs).

4. In addition, any owner and/or operator of a Residential Care Facility who is a licensed nurse who administers any medication to a resident will be in violation of operating an unlicensed nursing home.

. . .

7. The above mentioned procedures do not apply to emergency or first aid measures performed by operator[s], owner[s], and/or employee[s] of Residential Care Facilities. Emergencies are defined as those measures necessary to prevent death or trauma until such time that the patient can be transported to the appropriate medical facility. First aid measures will be defined as temporary procedures necessary to relieve trauma or injury by applying dressing and/or band-aids.

The declaratory judgment action by Berry challenged only provisions 3 and 4.

I agree with the trial court that those provisions impermissibly prevent certain licensed nurses from performing their nursing duties, that they arbitrarily distinguish between nurses in general and those who own or operate a residential care facility, and in particular that they conflict with the OLTC's declared purpose of protecting the health and safety of residents in long term care

facilities.

Berry testified that in her capacity as a licensed practical nurse and the owner-operator of a residential care facility she is confronted with residents who occasionally require temporary assistance with the administration of medication. Berry explained that these individuals sometimes need assistance in taking aspirin for arthritis, in applying Ben Gay to their backs, in using eye drops following recent cataract surgery, or in preparing and administering insulin shots.

By law, Berry is required to practice under the supervision of a physician or registered nurse. Provisions 3 and 4 preclude her from assisting in the administration of medication despite her medical training and her license as a practical nurse, even if she has directions from a physician or registered nurse, and even if the assistance would only be of a temporary nature after a specific request from a resident for her assistance. Berry testified that those same residents could, when requiring assistance, request any lay person to administer the same medications and not be subject to the provisions—regardless of whether that lay person had any medical training or background.

In one case, according to Berry, the result of provisions 3 and 4 was that an outside individual had to come to her facility to administer insulin to one of the residents. Berry first had to teach that individual how to draw the insulin and how to administer it.

Equally significant is Berry's testimony as to provision 4 of Regulation 1901, which charges owner-operator nurses who administer medications to their residents with the operation of an unlicensed nursing home. Berry explained that the effect of the provision was to allow home health care nurses not associated with her facility to drive to the facility and administer medications which Berry could not. Nothing in the record suggests that there is any difference in the quality of assistance which could be provided by Berry as opposed to a home health care nurse.

On one occasion, notwithstanding provision 4, the OLTC authorized Berry's administration of insulin because the weather prevented anyone from driving out to the facility.

A proper administrative regulation has the same force and effect as a statute enacted by the legislature and is accorded the

same presumption of validity. *Rowell* v. *Austin*, 276 Ark. 445, 637 S.W.2d 531 (1982). If, however, the regulation is arbitrary on its face, it must fail. *Arkansas State Nurses Association* v. *Arkansas State Medical Board*, 283 Ark. 366, 677 S.W.2d 293 (1984).

In *Arkansas State Nurses Association*, Regulation 10 of the Arkansas State Medical Board was challenged as an unauthorized attempt to regulate registered nurse practitioners. In part, the regulation limited the number of nurse practitioners which a physician could employ and provided that violation of the regulation would constitute "malpractice" within the meaning of the Arkansas State Medical Practices Act. This court determined that the regulation was arbitrary on its face.

The Medical Board argued that Regulation 10 was adopted as a reasonable means of assuring that nurse practitioners would be adequately supervised. However, it was clear that the restriction on the number of nurses failed to account for the availability of groups of physicians in professional associations who could assure adequate supervision of several nurses. This, when coupled with the fact that the regulation discouraged registered nurses from becoming nurse practitioners at a time when there was a need for additional medical care in the state, demonstrated that the restrictions could not be said to be reasonably related to the purpose underlying their implementation. Similar considerations are applicable here.

The thrust of the testimony by the director of the OLTC was that provisions 3 and 4 of Regulation 1901 provided a reasonable means by which the OLTC could maintain the distinction between intermediate care facilities and residential care facilities, which by definition cannot house individuals who require nursing care which includes the administration of medication. The OLTC argues that any effect on the ability of nurses connected with residential care facilities to practice their profession is merely incidental to the purpose of provision 4 to secure the health and safety of individuals requiring long term care.

The testimony introduced at trial, however, makes it abundantly clear that the challenged regulations adopted by the OLTC fall short of the required rational relationship between the provisions and the purpose underlying their implementation.

Instead of guaranteeing the placement of individuals in the appropriate care facility based upon their medical needs—which was the result intended by the OLTC when it limited the services permitted in residential care facilities—the provisions at issue often fail to accomplish that result and have the unintended effect that individuals such as those cared for by appellee Berry who occasionally need only periodic short term care or temporary assistance in the administration of medication turn to lay persons or outside nurses who in many instances may not have the requisite medical skill to properly administer medication or may have to travel such great distances as to present a threat to the health and safety of the resident. At the same time, a skilled and trained nurse (the owner-operator or employee nurse) stands by idle.

Provision 4 further results in an arbitrary distinction between equally qualified members of the nursing profession. There is no reasonable basis for allowing home health care nurses to come on the premises and administer medication but not allow licensed nurses who happen to be either owners or operators such as appellee Berry do the same—especially in light of testimony that it is permissible for lay persons to administer that same medication.

In support of its arguments for reversal, the OLTC places considerable emphasis upon the fact that home health care nurses who travel to residential care facilities to administer medications must, like their counterparts in nursing homes, chart or record the administration of these medications—requirements which do not apply in residential care facilities. Further emphasis is placed upon testimony by Jim Brown that whereas appellee Berry seeks to administer only aspirin or similar "harmless" medications, other owner-operator nurses may not limit themselves to such medications, thus presenting a grave health risk.

The record does not provide the basis for such an assumption. It does reveal, however, that the OLTC would not object to the administration of mediation by owner-operator nurses of residential care facilities provided those nurses were required to adhere to record keeping, safety, and storage requirements similar to those required of home health care nurses. In light of this testimony and in the interest of promoting quality health care

for the residents, the OLTC should, rather than condemn the nurse who happens to be the owner-operator of a residential care facility, permit such nurses to use their skills in isolated instances—provided their activities are recorded and adequate storage and administration procedures are implemented.

Provisions 3 and 4 of Regulation 1901 are arbitrary on their face. They curtail the services of qualified nurses under circumstances where those same services are in demand. The restrictions themselves defeat the purpose for which they were implemented—promotion of public health and safety—and the testimony shows that the restrictions could be made completely unnecessary simply by the adoption of record and storage keeping requirements. Surely, the regulations discourage nurses from operating residential care facilities at a time when there is a need for health care specialists in this area.

In sum, the provisions clearly discriminate against the licensed nurse who is the owner or operator of a residential care facility. She can be nothing more to her residents than an innkeeper.

PURTLE, J., joins in this dissent.