NATIONAL PARK MEDICAL CENTER, INC.,
d/b/a AMI National Park Medical Center
v. ARKANSAS DEPARTMENT OF HUMAN SERVICES and
Tom Dalton, Director of Arkansas Department of Human
Services, in His Official Capacity

95-411 911 S.W.2d 250

Supreme Court of Arkansas
Opinion delivered December 4, 1995

596

*Simpson & Graham, P.A.*, by: *Harold H. Simpson* and *Lynda M. Johnson*, for appellant.

*Charles A. Mackey*, for appellees.

DONALD L. CORBIN, Justice. Appellant, National Park Medical Center, Inc., d/b/a AMI National Park Medical Center, a provider of Medicaid services in Garland County, appeals the order of the Pulaski County Circuit Court granting the cross-motion for summary judgment of appellees, the Arkansas Department of Human Services and Tom Dalton, in his official capacity as the director thereof. Appellant questions the validity of certain administrative rules adopted by appellees to implement the Medicaid Inpatient Obstetrical and Routine Newborn Care Waiver Program ("OB Waiver Program"), as violative of the Arkansas Administrative Procedure Act ("APA"), Ark. Code Ann. § 25-15-201 to -214 (Repl. 1992 & Supp. 1993), and the Arkansas Freedom of Information Act ("FOIA"), Ark. Code Ann. § 25-19-101 to -107 (Repl. 1992 & Supp. 1993). Jurisdiction of this

appeal is properly in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(3). We affirm the trial court's judgment.

*Background*

The facts of this case are undisputed. The OB Waiver Program restricts the provision through Medicaid of certain inpatient obstetrical and routine newborn services, formerly available from any Medicaid provider hospital, to only those Medicaid provider hospitals designated by contract with appellees. During the period from approximately November 16, 1993, to approximately March 23, 1994, appellees took the following actions with respect to the OB Waiver Program: solicitation of bids from Medicaid provider hospitals in six counties, including Garland County, for provision of OB Waiver Program services; award of the provider contracts pursuant to competitive bid; execution of the Garland County provider contract with St. Joseph's Regional Health Center located in Hot Springs; acquisition of a waiver from the federal Health Care Financing Administration ("HCFA") for the provider contracts as regards certain provisions of the federal Social Security Act that the provider contracts would otherwise violate; and subsequent application for an amended HCFA waiver. Appellees developed the concepts of the bid solicitation and HCFA waiver at staff meetings that were not open to the public.

The original party-plaintiff and appellant's corporate predecessor-in-interest, American Medical International, Inc. d/b/a AMI National Park Medical Center ("AMI"), commenced this action on February 25, 1994, by filing a complaint in the Pulaski County Chancery Court, as amended on May 10, 1994. AMI was an unsuccessful bidder for the Garland County provider contract. Pursuant to subsequent court orders, the action was transferred to the Pulaski County Circuit Court and appellant was substituted as party-plaintiff. The amended complaint alleged that the foregoing actions of appellees constituted "De-Facto Rulemaking" in violation of the APA's procedures for adoption of administrative rules of section 25-15-204 and the FOIA's open public meetings requirement of section 25-19-106, and prayed for declaratory and injunctive relief.

On December 22, 1994, appellees published a "Notice of Rule Making" in the *Arkansas Democrat-Gazette* with respect

to the changes in the Medicaid program contemplated by the bid solicitation. On or about December 22, 1994, appellees also mailed notices concerning implementation of the provider contracts to health care providers and Medicaid beneficiaries as required by the HCFA. Appellees also prepared revised pages for the Medicaid Provider Manual reflecting the changes in the Medicaid program necessitated by implementation of the provider contracts.

Appellees provided the period from December 22, 1994, to January 30, 1995, for interested parties to submit written data, views or arguments concerning the adoption of the proposed rules. On January 11, 1995, appellees filed the proposed rules with the Arkansas Secretary of State and Arkansas State Library, with an adoption date of April 1, 1995.

On February 17, 1995, appellant filed a motion for summary judgment supported by a document entitled "Undisputed Facts." On February 28, 1995, both parties signed and filed a document entitled "Amended Undisputed Facts." On March 2, 1995, appellees filed a response to the motion for summary judgment and a cross-motion for summary judgment supported by the "Amended Undisputed Facts." On March 3, 1995, appellant filed a response to the cross-motion. On March 31, 1995, the trial court filed its judgment, adopting the "Amended Undisputed Facts," denying appellant's summary judgment motion and granting appellees' cross-motion for summary judgment. This appeal arises therefrom.

### Standard of review

The facts are not in dispute. In such a case, this court simply determines whether the appellee was entitled to judgment as a matter of law. *City of Little Rock* v. *Pfeifer*, 318 Ark. 679, 887 S.W.2d 296 (1994).

### APA issue

With respect to the APA issue, the trial court ruled that, in developing the bid solicitation and awarding the provider contract, appellees followed state contracting procedures according to the Arkansas Purchasing Law, Ark. Code Ann. § 19-11-201 to -261 (Repl. 1994), and that appellant participated fully in that process; that the actions that occurred to develop the bid solicitation did

not appear to be the type of activity contemplated in the statutory definitions of rule[1] and rule making,[2] thus no de facto rule making took place; and that after the bid solicitation process was completed, appellees then followed APA procedures.

Appellant's first argument is that appellees did not comply with APA procedures before final implementation of the rules implementing the OB Waiver Program because appellees violated the public comment requirement of section 25-15-204(a)(2)[3] by failing to provide the public with "reasonable opportunity" for comment prior to adoption of the rules. Therefore, appellant argues, the rules are invalid and appellees were not entitled to summary judgment as a matter of law. *See* section 25-15-204(f) (invalidating rules adopted without substantial compliance with section 25-15-204). Appellant's argument is premised upon his assertions, first, that the opportunity for comment must "occur prior to the agency fixing on its decision," and, second, that appellees were committed to all substantive details of the proposed rules prior to the end of the public comment period on January 30, 1995, owing to the provider contract and HCFA waiver that were then in place. This argument is meritless.

Appellant cites *Salmon Brook Convalescent Home, Inc.* v. *Commission on Hospitals and Health Care*, 417 A.2d 358 (Conn. 1979), for the proposition that the purpose of the public comment period is to provide the public with an opportunity to participate in the rule making process and to enable the agency to educate itself before establishing rules. While we do not disagree with this principle, we find *Salmon Brook* unpersuasive on the facts of the case before us because the issue presented to the Con-

---

[1]Section 25-15-202(4).

[2]Section 25-15-202(5).

[3]Section 25-15-204(a)(2) provides:

(a) Prior to the adoption, amendment, or repeal of any rule, the agency shall:

. . . .

(2) Afford all interested persons reasonable opportunity to submit written data, views, or arguments, and, if the agency in its discretion shall so direct, oral testimony or argument. Where rules are required by law to be made on the record after opportunity for an agency hearing, the provisions of that law shall apply in place of this subdivision.

necticut Supreme Court was simply whether the APA was applicable.

Appellant relies upon *Mahoney* v. *Shinpoch*, 732 P.2d. 510 (Wash. 1987), for its assertion that section 25-15-204(a)(2) is violated if the agency has "already fixed on its decision" prior to expiration of the public comment period. In *Mahoney*, the Washington Supreme Court quoted its state's public comment statute, which required that prior to adoption or amendment of a rule the agency "shall consider fully all written and oral submissions respecting the proposed rule," and held that the statute was not satisfied on the facts of that case. *Mahoney*, 732 P.2d. at 515. Because the APA public comment statute for the State of Washington differs substantially from section 25-15-204(a)(2) and because of factual differences in the cases, we find *Mahoney* unpersuasive. Further, appellant's assertion that appellees had "fixed" upon the proposed rules by virtue of the provider contract and HCFA waiver is not borne out by the record. The provider contract, as abstracted, indicates that appellees had a right to cancel for convenience, and the undisputed facts reveal that amendment to the HCFA waiver could be requested. Logically, then, appellees had the ability to modify the proposed rules during the public comment period to the extent the rules emulated the terms of the provider contract or HCFA waiver. Appellant was also fully aware of the procedure followed by appellees since it competed for a provider contract and could not argue that its own ability to comment on the proposed rules was curtailed.

Appellant also summarily argues that the trial court's ruling was erroneous because it focused entirely upon the bid solicitation and contract award to the exclusion of appellees' other actions "prior to initiation of the formal rule making process." We decline to address this argument because it is made without binding authority or convincing argument. *Marsh & McLennan of Arkansas* v. *Herget*, 321 Ark. 180, 900 S.W.2d 195 (1995).

The trial court did not err in granting summary judgment on the APA issue. An administrative regulation is afforded the same presumption of validity given a statute, and we review agency rule making procedures to determine if the agency acted arbitrarily, capriciously, in an abuse of discretion, or otherwise

not in accordance with the law. *Department of Human Servs.* v. *Berry*, 297 Ark. 607, 764 S.W.2d 437 (1989). Appellant has failed to carry its burden to demonstrate error.

*FOIA Issue*

With respect to the FOIA issue, the trial court quoted the open public meetings requirement of section 25-19-106(a) and ruled that appellees' staff meetings held to develop the bid solicitation were not subject to the FOIA "because they do not appear to be the type of meeting that is contemplated by the statute." Appellant argues that these meetings were subject to and conducted in violation of section 25-19-106 and that the appropriate action is to invalidate the administrative rules. This argument is meritless.

Section 25-19-106 provides, in pertinent part:

> (a) Except as otherwise specifically provided by law, all meetings, formal or informal, special or regular, of the governing bodies of all municipalities, counties, townships, and school districts and all boards, bureaus, commissions, or organizations of the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds, shall be public meetings.

The definitions provision of the FOIA, section 25-19-103, defines "public meetings" as follows:

> (2) "Public meetings" means the meetings of any bureau, commission, or agency of the state, or any political subdivision of the state, including municipalities and counties, boards of education, and all other boards, bureaus, commissions, or organizations in the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds.

Section 25-19-106, therefore, does not plainly encompass appellees' challenged staff meetings. Further, we are aware of no case law that is contravened by the trial court's ruling that these meetings were not subject to section 25-19-106. *See* John J. Watkins, *Arkansas Freedom of Information Act*, Chapter 4 "Open Meetings" and cases cited therein (2d ed. 1994). Being mindful of the administrative nightmare that would ensue if such staff meetings were required to comply with section 25-19-106, and

consistent with our long-held rule that statutory construction requires a common sense approach, *e.g., Dozier* v. *Ragsdale*, 186 Ark. 654, 55 S.W.2d 779 (1932), we find the trial court's ruling was not error.

Further, even if appellees' staff meetings had violated section 25-19-106, voidability would not be an appropriate remedy on the facts of this case. In *Rehab Hosp. Servs. Corp.* v. *Delta-Hills Health Sys. Agency, Inc.*, 285 Ark. 397, 687 S.W.2d 840 (1985), a case relied upon by appellant, we stated that voidability of some agency actions is a valid option to enforcement of section 25-19-106, consistent with our policy to liberally construe the FOIA. However, we declined to grant the remedy of voidability on the facts of that case, even though we held the agency action violated the FOIA. We stated that development of the law on invalidation would necessarily be made on a case-by-case basis. Among our reasons for declining to grant voidability in *Rehab Hospital Services Corp.* were, first, that there was no showing that the agency knowingly violated the FOIA or that the appellant brought it to the agency's attention, and, second, that the appellant did not seek to protect the public's right to information, but sought invalidation solely for its own purposes.

In this case, there has been no showing that appellees knowingly violated section 25-19-106 by conducting staff meetings in which the concept of the bid solicitation, which was issued on or about November 16, 1993, was developed. Appellees' purported FOIA violation via its staff meetings was brought to their attention when AMI filed a bid protest, dated January 28, 1994, with appellees and the Office of State Purchasing, pursuant to section 19-11-244 of the Arkansas Purchasing Law, of the award of any contract pursuant to the bid solicitation.[4] It is noteworthy, however, that on January 14, 1994, according to the bid protest, AMI filed a bid pursuant to the bid solicitation. It is undisputed that the submitted bids were publicly opened on January 21, 1994, and that, by letter dated February 1, 1994, appellees awarded the Garland County provider contract to St. Joseph's Regional Health Center. By letter dated February 1, 1994, appellees also

---

[4] A copy of the bid protest was attached to appellant's response to the cross-motion for summary judgment.

issued a final agency determination that appellant's protest was without merit, a copy of which letter was attached to appellant's response to the cross-motion.

 The requirement that a party must bring the purported FOIA violation to the attention of the agency prior to filing a declaratory judgment action derives from the principle of exhaustion of administrative remedies. *Rehab Hosp. Servs. Corp.*, 285 Ark. 397, 687 S.W.2d 840. The purpose for the requirement is to afford the agency the opportunity to address the issue, thereby reducing the potential for harm if we allowed invalidation on the basis of an unintentional past violation of the FOIA by the agency. *Id.* Otherwise, as we have held:

> It would mean that any person who did not like a resolution, ordinance, rule, or regulation passed since the inception of the [FOIA] could have it invalidated, under the subterfuge of freedom of information, because of some unintentional past violation which had never been brought to the attention of the governmental entity. Such an interpretation would create a substantial amount of undesirable uncertainty.

*Id.* at 401, 687 S.W.2d at 843. This concern is aptly illustrated by the present case, in which it is not clear either that appellees were timely afforded an opportunity to address the purported FOIA violation arising from its staff meetings, or that appellant exhausted its administrative remedies. Although AMI eventually brought the purported FOIA violation to the attention of appellees, its bid protest was not filed until after the bid solicitation had been outstanding for some two months and the submitted bids, including AMI's bid, had been publicly opened. Further, the record fails to show either that AMI appealed the purported denial of its rights pursuant to the procedure for appeal set forth in section 25-19-107 of the FOIA, which requires that a judicial hearing be conducted within seven days of the date of application of the aggrieved party, or that appellant sought judicial review of appellees' final agency action that its bid protest was without merit.

The amended complaint filed in this action prays for a declaration that appellees' actions were rule making conducted in violation of the APA and FOIA, for a preliminary injunction to pro-

hibit appellees from taking action as regards the HCFA waiver, the bid solicitation or the provider contracts, for a permanent injunction to prohibit appellees from taking action as regards the HCFA waiver, the bid solicitation, the provider contracts, and for a permanent injunction prohibiting appellees from taking action as regards the provision of Medicaid inpatient obstetrical and routine newborn care services pursuant to competitive bidding in violation of the APA and FOIA. Appellant does not seek to protect the public's right to information. It seeks invalidation of appellees' actions as regards the OB Waiver Program as an unsuccessful bidder for the provider contract for Garland County.

Finally, appellant argues that the trial court erred by focusing entirely upon the bid solicitation process to the exclusion of appellees' other actions. The burden of obtaining the trial court's ruling regarding issues sought to be raised on appeal belongs to the appellant. *Brumley* v. *Naples*, 320 Ark. 310, 896 S.W.2d 860 (1995). This argument is therefore without merit.

The trial court's judgment is affirmed.