The Honorable Mark Pate State Representative P.O. Box 943 Bald Knob, AR 72010-0943
Dear Representative Pate:
You have presented the following questions for my opinion:
 (1) Who is the immediate supervisor of an assistant to the Clerk/Treasurer of a city if there is no ordinance in place advising of the same?
 (2) Does the elected Clerk/Treasurer have full authority over the employee(s) in his office?
 (3) Would there be a conflict if such an employee worked for anyone other than the Clerk/Treasurer?
 (4) If a Mayor/City council goes into executive session for an administrative action (non-punitive), is the decision from such a meeting valid if it does not fall under any other guidelines in A.C.A. § 25-19-106(c)(1)?
 (5) What is the recourse if a Mayor/City Council goes into executive session without publicly announcing the same in accordance with A.C.A. § 25-19-106(c)(1)?
 (6) What is the recourse if the City Attorney was called into the executive session two times, but does not fall under the auspices of A.C.A. § 25-19-106(c)(2)(A)?
RESPONSE
Question 1 — Who is the immediate supervisor of an assistant to theClerk/Treasurer of a city if there is no ordinance in place advising ofthe same?
As an initial matter, I must note that I am not entirely certain precisely what meaning you have intended to be placed on the term "immediate supervisor," as used in your question. For purposes of this discussion, I will assume that you have used the term to refer to the person who exercises control over the day-to-day activities of the employee in question and who possesses the power to hire and fire that employee and make salary recommendations for that employee.
State law does not explicitly address your question. Indeed, state law is somewhat unclear on this issue and could benefit from legislative action. Arguments could be propounded in support of the competing views that the mayor, the city council, or the Clerk/Treasurer is the immediate supervisor of an assistant to the Clerk/Treasurer. I am inclined to adopt the view that in the absence of an ordinance addressing the issue, the supervisory authority over an assistant to the Clerk/Treasurer falls primarily upon the Clerk/Treasurer, subject to ultimate control of the city council or city board of directors.
I must first explain why I do not favor the view that the mayor is the immediate supervisor of city employees who work for other city officers. I acknowledge that an argument could be presented in support of that view, based upon the provisions of A.C.A. § 14-43-504. That statute states in pertinent part:
 (a) The mayor of the city shall be its chief executive officer and conservator of its peace. It shall be his special duty to cause the ordinances and regulations of the city to be faithfully and constantly obeyed.
(b) The mayor shall:
 (1) Supervise the conduct of all the officers of the city, examine the grounds of all reasonable complaints made against them, and cause all their violations of duty or other neglect to be properly punished or reported to the proper tribunal for correction;
A.C.A. § 14-43-504(a) and (b)(1).
The argument that this statute gives the mayor immediate supervisory authority over city employees would necessitate an interpretation of the term "officers," as used therein, to include non-elected city employees. I have recently interpreted this provision to encompass other elected city officials, to the extent of permitting some oversight by the mayor in connection with misconduct of other elected city officials. See Op. Att'y Gen. No. 2004-050, citing Op. Att'y Gen. No. 94-351. My office has never addressed the question of whether the term "officers," as used in A.C.A. § 14-43-504, includes non-elected city employees. In my opinion, if a court were faced with the question, it would adopt an interpretation of the statute under which the term "officers" does not include rank-and-file non-elected city employees. My view is influenced by the fact that as a practical matter, city department heads must, of necessity, exercise considerable day-to-day control over the activities of the employees who work in their departments.[1] As I recently observed in Opinion No. 2004-050, "elected municipal officials are entitled to considerable autonomy in determining how to discharge their assigned duties." Op. Att'y Gen. No. 2004-050 at 5, citing Op. Att'y Gen. No. 94-351. Moreover, as I also observed in Opinion No. 2004-050, elected city officials must be permitted to perform the duties the electorate charged them to perform; otherwise, the will of the electorate could be subverted. Id. An elected city official's performance of the duties to which he was elected will necessarily entail the exercise of a considerable degree of control over the workings of his own office, including the day-to-day activities of the city employees who work in that office. For this reason, I believe that the Clerk/Treasurer should be deemed the "immediate supervisor" of an assistant to the Clerk/Treasurer, to the extent of overseeing the day-to-day activities of that person, and to the extent of making initial hiring and firing decisions and salary recommendations.
However, I must qualify this conclusion by pointing out that the city council or city board of directors possesses significant ultimate control over non-elected city employees in the sense of having the authority to prevail in the event of a conflict with an elected city department head concerning an employment-related matter. Cities are granted the authority to exercise all powers relating to municipal affairs, see A.C.A. §14-42-307(a)(1), and this power is exercised to a significant degree through the actions of the city council or city board of directors. See
A.C.A. § 14-43-502 (cities of the first class[2]); A.C.A. § 14-45-101
(incorporated towns); A.C.A. § 14-47-109 (cities having a city manager form of government); A.C.A. § 14-48-110 (cities having a city administrator form of government). Particularly significant is the fact that the city council or city board of directors holds the power to control city finances and appropriations. A.C.A. § 14-42-308; A.C.A. §14-43-502(b)(1); A.C.A. § 14-47-125; 14-48-122; 14-55-204. Moreover, this office has taken the view that because state law does not address the issue, the city council has the authority to enact local ordinances assigning supervisory authority over city employees. See Ops. Att'y Gen. Nos. 98-068; 95-187; 93-268. This considerable authority of the city council or city board of directors empowers that body to prevail ultimately in the event of a conflict with a city department head regarding an employment matter. It is in this sense that I say that the city council or city board of directors exercises "ultimate" authority over non-elected city employees. However, I reiterate that in the more real and practical sense, the city department head is the immediate supervisor of the city employees who work in that official's office.
For the foregoing reasons, I conclude that in the absence of an ordinance formally charging the Clerk/Treasurer and other department heads with supervisory authority over the city employees who work in their departments, those city department heads will, as a practical matter and of necessity, exercise immediate supervisory control over the city employees who work in their offices. However, in the event of a conflict between the Clerk/Treasurer or other particular department head and the city council or city board of directors regarding an employment-related matter, the city council has the power and authority to prevail in an ultimate sense.
I reiterate that this issue is unclear under current law, and legislative clarification is warranted.
Question 2 — Does the elected Clerk/Treasurer have full authority overthe employee(s) in his office?
See response to Question 1.
Question 3 — Would there be a conflict if such an employee worked foranyone other than the Clerk/Treasurer?
Because I have opined that the Clerk/Treasurer exercises immediate supervisory control over the city employees who work in the Clerk/Treasurer's department (subject to the ultimate control of the city legislative body), a response to this question is not necessary.
Question 4 — If a Mayor/City council goes into executive session for anadministrative action (non-punitive), is the decision from such a meetingvalid if it does not fall under any other guidelines in A.C.A. §25-19-106(c)(1)?
In responding to this question, I must point out as an initial matter that I am not certain what you mean by "an administrative action (non-punitive)." In any event, in order to assure the validity of any decision that is made as a result of a city council's executive session, the session must be held in compliance with A.C.A. § 25-19-106. More specifically, the purpose of the session must be announced in public, the purpose must be one that is enumerated in A.C.A. § 25-19-106, the persons who attend must only be those listed in A.C.A. § 25-19-106(c)(2), and the vote on any matter discussed in the executive session must be conducted in public. If the executive session does not meet these criteria, any decision that is made by the governing body on the basis of that session will be subject to challenge pursuant to A.C.A. § 25-19-107. However, it should be noted that the Arkansas Supreme Court will not overturn a decision resulting from an illegal executive session until the governing body has first been given an opportunity (and failed) to correct its action by conducting the business in question in a meeting that complies with A.C.A. § 25-19-106. See Rehab Hosp. Serv. v. Delta-Hills HealthSys. Inc., 285 Ark. 397, 687 S.W.2d 840 (1985).
Question 5 — What is the recourse if a Mayor/City Council goes intoexecutive session without publicly announcing the same in accordance withA.C.A. § 25-19-106(c)(1)?
If a governing body fails to comply with the requirements of A.C.A. §25-19-106 in holding an executive session, the aggrieved parties can petition for relief under A.C.A. § 25-19-107, which states:
 (a) Any citizen denied the rights granted to him or her by this chapter may appeal immediately from the denial to the Pulaski County Circuit Court or to the circuit court of the residence of the aggrieved party, if an agency of the state is involved, or to any of the circuit courts of the appropriate judicial districts when an agency of a county, municipality, township, or school district, or a private organization supported by or expending public funds, is involved.
 (b) Upon written application of the person denied the rights provided for in this chapter, or any interested party, it shall be mandatory upon the circuit court having jurisdiction to fix and assess a day the petition is to be heard within seven (7) days of the date of the application of the petitioner, and to hear and determine the case.
 (c) Those who refuse to comply with the orders of the court shall be found guilty of contempt of court.
 (d) In any action to enforce the rights granted by this chapter, or in any appeal therefrom, the court shall assess against the defendant reasonable attorney's fees and other litigation expenses reasonably incurred by a plaintiff who has substantially prevailed unless the court finds that the position of the defendant was substantially justified or that other circumstances make an award of these expenses unjust. However, no expenses shall be assessed against the State of Arkansas or any of its agencies or departments. If the defendant has substantially prevailed in the action, the court may assess expenses against the plaintiff only upon a finding that the action was initiated primarily for frivolous or dilatory purposes.
A.C.A. § 25-19-107.
However, as noted previously, if a party who is aggrieved by a violation of the open meetings requirements of the FOIA petitions for relief, the court, before granting the relief, will require the petitioners to give the governing body an opportunity to correct its previous violations by meeting again in compliance with the FOIA. See Rehab. Hosp. Servs. Corp.v. Delta-Hills Health Sys. Agency, 285 Ark. 397, 687 S.W.2d 840 (1985).Accord, Romine v. Dept. of Environmental Quality, 342 Ark. 380,40 S.W.3d 731 (2000); National Park Med. Ctr., Inc. v. Arkansas DHS,322 Ark. 595, 911 S.W.2d 250
(1995).
I also note that criminal penalties can be imposed for violations of the requirements of the FOIA. See A.C.A. § 25-19-104. Such penalties are sought at the discretion of the prosecuting attorney.
Question 6 — What is the recourse if the City Attorney was called intothe executive session two times, but does not fall under the auspices ofA.C.A. § 25-19-106(c)(2)(A)?
As discussed in response to Question 5, the recourse for any violation of the FOIA is that which is set forth at A.C.A. § 25-19-107, quoted above. In addition, as also noted, criminal penalties can be imposed.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] I am also influenced by the fact that this office has consistently distinguished between an "office" and mere "employment." For a discussion of this issue, see, e.g., Op. Att'y Gen. No. 2003-138. Moreover, an "employee" typically does not meet the widely-accepted view of what constitutes an "officer" under Arkansas law. For a discussion of this issue, see, e.g., Op. Att'y Gen. No. 2003-056.
[2] My predecessors and I have opined that A.C.A. § 14-43-502 applies by implication to cities of the second class, there being no equivalent provision for the powers and duties of city councils in cities of the second class. See, e.g., Ops. Att'y Gen. Nos. 2004-050; 97-312; 97-121; 97-109; 97-041; 96-328; 95-367, citing Conner v. Burnett, 216 Ark. 559,226 S.W.2d 984 (1950) and Weeks v. Texarkana, 50 Ark. 81 6 S.W. 504
(1887).