The Honorable Bill Stovall State Representative and Speaker of the House 2324 Heber Springs Road West Quitman, AR 72131-9426
Dear Mr. Speaker:
I am writing in response to your request for my opinion on the following questions:
 1. If a county assessor accepts the lowest bid for a reappraisal plan but the county judge refuses to sign the contract, can the Arkansas Assessment Coordination Department waive the signature requirement for the county judge, provided that the county assessor certifies that the county judge has been furnished a copy of the reappraisal plan?
 2. Can a county judge unilaterally cause the county to be out of compliance with the reappraisal plan by refusing to sign off on the contract, or does Arkansas Code § 26-26-1907 apply only to the failure to properly carry out the terms of the contract and reappraisal plan after execution of the contract and plan?
You have included in your background information the following analysis:
 Act 1185 of 1999 and the Rules of the Assessment Coordination Department ("ACD") require county assessors to advertise for bids when awarding contracts for reappraisal services. If a county chooses to employ an appraisal firm other than the lowest bidder the county's assessor must submit a written narrative to ACD explaining in detail the criteria utilized to select a firm other than the lowest bidder. ACD Rule 3.39.
 Schedule A-10 of ACD's Rules contains the form and requirements for counties to submit contracted reappraisal plans to ACD. Page 23 of Schedule A-10 under the heading "Requisite Signatories" provides:
 "To qualify a Contracted Plan for consideration, it must at a minimum be signed by the County Assessor, County Judge, Chairman of the Equalization Board, and agent of the Appraisal Firm, and the reappraisal manager, unless a waiver of the requirement is obtained from the Director of ACD for good cause shown. Signatures of the county's Board of Equalization, Quorum Court, and school district Superintendents are also requested. In the event one of the aforementioned does not sign the Plan, the Assessor must certify that the member(s) received a copy of the Plan."
 To carry out the provisions of Title 26, Chapter 26, Subchapter 19 of the Arkansas Code, ACD "shall . . . [e]nter into contracts with private entities for appraisal services on behalf of counties on such terms and conditions as the department deems are consistent with the provisions of this subchapter and are necessary and appropriate in its implementation." Ark. Code § 26-26-1905(a)(3). "The county assessor may enter into a contract for professional services with a professional reappraisal company when both the proposed contract and the reappraisal management plan submitted by the contractor have been approved by [ACD]." Ark. Code § 26-26-1905(f)(1).
RESPONSE
With respect to your first question, it is unclear under the applicable rules and regulations whether the Arkansas Assessment Coordination Department (the "ACD") may waive the requirement that a county judge sign off on a reappraisal plan. A tension exists among the applicable administrative rules addressing this question. ACD Rule 3.19 mandates that contracted reappraisal plans bear the notarized signatures of various officials, including the county judge. Schedule A-10 to the ACD Rules further provides that the complete plan submitted for approval to the ACD must be signed by various officials, including the county judge. However, in what appears to be a contradictory provision, Schedule A-10 also provides that the director of the ACD, possibly with the approval of the Legislative Council (see ACD Rule 3.52), may waive the signature requirement as to these officials "for good cause shown." Also pursuant to Schedule A-10, the assessor is authorized to submit a reappraisal plan to the ACD for approval without the signatures of certain officials so long as he certifies that he has presented these officials with a copy of the plan. In my opinion, although the regulation could be more clearly written, the assessor may follow this procedure only with respect to members of the board of equalization, justices of the peace and school district superintendents, whose signatures are "requested" but not required under the applicable rule. I do not believe this procedure is available to absolve the assessor of the responsibility to obtain the county judge's signature on a reappraisal plan. I believe the assessor could dispense with obtaining the county judge's signature on the plan prior to its submission for approval only if the ACD had waived the signature requirement — an action it is unclear the ACD may take under its own current rules. With respect to your second question, I believe A.C.A. § 26-26-1907 deals only with improper performance once the county has entered into a contract with a private appraisal company. However, if the county judge refuses to sign off on a reappraisal contract, the ACD might decline to approve the plan and instead contract directly for reappraisal services pursuant to A.C.A. § 26-26-1905.
Question 1: If a county assessor accepts the lowest bid for areappraisal plan but the county judge refuses to sign thecontract, can the Arkansas Assessment Coordination Departmentwaive the signature requirement for the county judge, providedthat the county assessor certifies that the county judge has beenfurnished a copy of the reappraisal plan?
For reasons discussed below, the question of whether the ACD can waive the requirement that the county judge sign off on a reappraisal plan is unclear under the applicable statutes and regulations. The regulations contain conflicting provisions in this regard. So far as the role of the assessor is concerned, a portion of Schedule A-10 empowers the assessor to forbear obtaining the signatures of certain specified officials other than the county judge by certifying that these officials have received copies of the reappraisal plan. The designated officials are members of the board of equalization, justices of the peace and district school superintendents.
I will note at the outset of my analysis that your initial representation regarding the substance of Acts 1999, No. 1185 (the "Act"), which is codified at A.C.A. §§ 26-26-1901 through -1911 (Supp. 2005), is not entirely accurate. Although it is the case that the ACD Rule 3.39 mandates that the county assessors advertise for bids when awarding contracts for appraisal services, the Act itself contains no such requirement. Notwithstanding this fact, I believe the ACD is fully authorized to require that appraisal contracts be advertised for bids. As the court noted in Arkansas Health Services Commission v.Regional Care Facilities, Inc., 351 Ark. 331, 338, 93 S.W.3d 672
(2002):
 When considering the validity of a regulation, the court must give the regulation the same presumption of validity as it would a statute. National Park Med. Ctr., Inc. v. Arkansas Dep't of Human Servs., 322 Ark. 595, 911 S.W.2d 250 (1995). In reviewing the adoption of regulations by an agency under its rule-making procedures, a court is limited to considering whether the administrative action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Department of Human Servs. v. Berry, 297 Ark. 607, 764 S.W.2d 437 (1989) (citing Arkansas Pharmacists Assoc. v. Harris, 627 F.2d 867 (8th Cir. 1980)). A court will not attempt to substitute its judgment for that of the administrative agency. Id. (citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402
(1971)). A rule is not invalid simply because it may work a hardship, create inconveniences, or because an evil intended to be regulated does not exist in a particular case. Id.
Section 26-26-1911 of the Code expressly directs the ACD to "promulgate regulations for the implementation of this subchapter." Subsection 26-26-1905(a)(1) likewise authorizes the ACD to "[d]evelop and implement rules relating to reappraisal procedures to be developed by counties." Furthermore, as noted in your request, A.C.A. § 26-26-1905(a)(3)(A) authorizes the ACD to "[e]nter into contracts with private entities for appraisal services on behalf of counties on such terms and conditions as the department deems are consistent with the provisions of this subchapter and are necessary and appropriate in its implementation." I believe these charges clearly warrant the ACD's imposition of a bidding requirement on appraisal contracts.
Just as it contains no provision requiring competitive bidding on an appraisal contract, the Act likewise contains no provisions with respect to who must sign off on such a contract. Subsection26-26-1905(b)(1) of the Code charges the ACD with the following responsibility:
 Each county shall follow the reappraisal procedures established by the department and file a reappraisal management plan with the department no later than November 1 of the year preceding the commencement of the reappraisal.
My inquiries reveal that a reappraisal plan is initially submitted for approval without signatures. Upon the approval of the proposed plan, which normally follows the model captioned "Contracted Countywide Reappraisal Plan (Five Year)" prepared by the ACD, the assessor will advertise the contract for bids. Upon tentatively accepting a bid, the assessor will obtain the requisite signatures and resubmit the plan to ACD for approval.
ACD Rule 3.19, captioned "Contracted Reappraisal Plans — Signature Requirements," sets forth the following signature requirements for reappraisal plans:
 Contracted reappraisal plans must bear the notarized signatures of the county assessor, chairman of the Board of Equalization, county judge, an agent of the reappraisal company performing the reappraisal, and the appraisal manager. The plan must be approved by a quorum court appropriation ordinance.
Schedule A-10 to the ACD Rules, captioned "Contracted Countywide Reappraisal Plan (Five Year)," further provides in pertinent part:
 2. [T]he complete Plan which is submitted to ACD consists of the Contract between the Appraisal Firm and officers of the County authorized to enter into a contract. The Plan shall be signed by all signatories (Assessor, County Judge, Chairman of the Equalization Board, Agent of Reappraisal Company, and Appraisal Manager).
 3. [A]ny proposed deviation from the Plan (i.e., amendments to the Plan) must be submitted in writing and approved by the ACD. The proposal must clearly state the fact(s) necessitating the deviation. . . .
The regulations just quoted appear to be unambiguous in requiring that the county judge sign off on a reappraisal plan, which under the definition just quoted is the executed proposed contract between the county and an appraisal company.
However, in what might be read as a contradictory section captioned "Requisite Signatories," Schedule A-10 further provides in pertinent part:
 To qualify a Contracted Plan for consideration, it must at a minimum be signed by the County Assessor, County Judge, Chairman of the Equalization Board, and agent of the Appraisal Firm, and the reappraisal manager, unless a waiver of the requirement is obtained from the Director of the ACD for good cause shown. Signatures of the county's Board of Equalization, Quorum Court, and school district Superintendents are also requested. In the event one of the aforementioned does not sign the Plan, the Assessor must certify that the member(s) received a copy of the Plan.
(Emphases added.) I am informed that ACD interprets this provision as applying to the plan as resubmitted for final approval. The reference to the ACD's "consideration" of the plan, then, is not to the consideration it conducts when the plan is initially reviewed but rather to the plan in its final negotiated and executed form.
In apparent contravention of the absolute signature requirement set forth in the regulations discussed above, the highlighted portion in the first sentence of the passage just quoted suggests that the director of the ACD has the discretion, "for good cause shown," to waive the signature requirement.[1] I am unable to account for this discrepancy. Administrative clarification appears warranted.
The highlighted last sentence of the regulation just quoted raises the issue of whether a plan might be ripe for approval if an assessor certifies that any designated signatory who declined to sign nevertheless received a copy of the plan. Schedule A-10 is hardly a model of clarity in this regard. The excerpt from Schedule A-10 quoted above begins by declaring that the individuals listed in the first paragraph "must at a minimum" sign off on a contracted plan unless the ACD director waives the signature requirement for good cause. The second sentence of the excerpted rule provides that the signatures of members of the board of equalization, justices of the peace and district school superintendents "are also requested." Finally, the closing sentence ambiguously provides that if "one of the aforementioned" does not sign off on the plan, "the Assessor must certify that the member(s) received a copy of the Plan." It is unclear in the regulation whether the term "aforementioned" refers only to the individuals referenced in the preceding sentence — namely, members of the board of equalization, members of the quorum court and district school superintendents — or whether it refers to everyone mentioned in the regulation, including the county judge.
In determining the scope of the term "aforementioned," I am guided by various principles of statutory interpretation.[2] First, a statute or legislative regulation is construed just as it reads, giving the words their ordinary and usually accepted meaning in common language.Edwards v. State, 347 Ark. 364, 64 S.W.3d 706 (2002). Moreover, I am obliged to read potentially conflicting provisions together as harmonious and to reconcile them if at all possible. Grittsv. State, 315 Ark. 1, 864 S.W.2d 859 (1993); City of Fort Smithv. Tate, 311 Ark. 405, 844 S.W.2d 356 (1993). To this end, I am inclined to read the term "aforementioned" narrowly as applying only to the individuals mentioned in the second sentence of the recited regulation. To do otherwise would be to contravene the express regulatory directive that the individuals mentioned in the first sentence "must at a minimum" sign off on a contracted plan unless the ACD director, most likely with the concurrence of the Legislative Council, has waived that requirement. I am reinforced in this reading by the use of the term "member(s)" in the highlighted sentence, given that several of the individuals listed in the first sentence, including both the assessor and the county judge, are not "members" of any governmental unit. Specifically with respect to your question, then, the mere fact that an assessor has certified that he had presented the county judge with a copy of the plan would not appear to qualify the plan for consideration by the ACD. For the ACD to consider a contracted plan for approval under these circumstances it would have to waive the signature requirement. However, again, the ACD's waiver authority is unclear because of the conflict in the rules. Legislative or administrative clarification on this issue appears warranted.
Question 2: Can a county judge unilaterally cause the countyto be out of compliance with the reappraisal plan by refusing tosign off on the contract, or does Arkansas Code § 26-26-1907apply only to the failure to properly carry out the terms of thecontract and reappraisal plan after execution of the contract andplan?
In my response to your first question, I addressed what I consider to be the procedural signature requirements to enter into a reappraisal contract with a private company. I gather from your question that you are concerned whether the "proper reappraisal procedures" addressed in A.C.A. § 26-26-1907 include these signature requirements. In my opinion, they do not.
Subsection 26-26-1907(c)(2) provides:
 (A)(i) Upon a finding by the department that proper reappraisal procedures are not being followed, the county assessor or contractor shall be notified that the reappraisal is out of compliance with accepted guidelines as established in § 26-26-1901 et seq.
and rules enacted pursuant thereto.
 (ii) The department shall notify the county assessor or contractor in writing that the assessor or contractor has thirty (30) days in which to bring the reappraisal into compliance.
 (B) If there is a further finding that proper reappraisal procedures are not being followed, the contract shall be promptly terminated and the department shall negotiate another contract and management plan for the completion of the reappraisal project.
In my opinion, this statute addresses the improper conduct of a reappraisal once a contract to conduct the reappraisal has been made. This is illustrated by the fact that subsection (c)(2)(B) of the statute expressly references terminating the contract if circumstances warrant.
Having offered this opinion, I must further note that a county judge's failure to sign off on a plan might become an issue under A.C.A. § 26-26-1905(e), which provides in pertinent part:
 (2)(A) If the initial reappraisal plan required in subsection (b) of this section as submitted by the county assessor is rejected by the department, the county assessor shall be allowed to submit an alternate plan within thirty (30) days of the rejection of the initial plan.
 (B) If the alternate reappraisal management plan is rejected by the department, the county shall employ and enter into a contract for professional services with a professional reappraisal company on behalf of all taxing units in the county as set forth in subsection (f) of this section.[3]
In my opinion, a violation of one of the rules discussed in my response to your first question might prompt the ACD to reject a reappraisal management plan. As previously noted, under these rules, the county judge may well be obliged to sign off on a reappraisal contract before ACD will consider approving it.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE, Attorney General
MB/JHD:cyh
[1] Although this rule provides that the director on his own authority may waive the signature requirement, ACD Rule 3.52, captioned "Waiver," sets forth a more stringent standard:
 In order to effect the successful implementation of Act 1185 of 1999, contingent upon prior review of the Legislative Council of the General Assembly of the State of Arkansas, and upon good cause being shown, the Director of the Department may waive or suspend any provision of the rules.
 In the even of the granting of a waiver or suspension of any one or more of these Rules, each County Assessor and Contractor will be notified.
I am informed that as a matter of administrative policy, ADC considers itself bound to obtain the approval of the Legislative Council before waiving or suspending any of its rules.
[2] As noted in N. Singer, Statutes and StatutoryConstruction § 31.6, at 723-24 (6th ed. 2002) (citing cases): "When a regulation is legislative in character, rules of interpretation applicable to statutes should be used in determining its meaning."
[3] The referenced subsection (f) provides:
 (1) The county assessor may enter into a contract for professional services with a professional reappraisal company when both the proposed contract and the reappraisal management plan submitted by the contractor have been approved by the department.
 (2)(A) If the initial reappraisal plan submitted by the contractor is rejected by the department, the contractor shall be allowed to submit an alternate plan.
 (B) If the second reappraisal management plan is rejected by the department, it shall write a reappraisal management plan that the county shall employ and enter into a contract for professional services with a professional reappraisal company on behalf of all taxing units in the county.